# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

LAURICE EL BADRY RAHME LTD.
d/b/a LAURICE & CO.,

               **Plaintiff**    :

    - against-

FEDERAL INSURANCE COMPANY,   :

               **Defendant.**  :

-------------------------------------------------------X

CIVIL ACTION NO.

**07 CV 11030**

**COMPLAINT**
(Jury Demanded)

RECEIVED
DEC 0 5 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff Laurice El Badry Rahme Ltd. d/b/a Laurice & Co. by its attorneys, as and for its Complaint against the Defendant Federal Insurance Company, alleges as follows:

## PARTIES

1.    Plaintiff Laurice El Badry Rahme Ltd. d/b/a Laurice & Co. ("Laurice" and/or "Plaintiff") is a New York limited liability company, with a principal place of business located at 9 Bond Street in New York, New York 10012.

2.    Laurice is a marketer of high quality perfumes. It has retail locations in New York City and also sells to major retail chains. Ms. Laurice Rahme is the chief executive and founder of Laurice.

3.    Upon information and belief, Defendant Federal Insurance Company ("Federal" and/or "Defendant") is an insurance company organized under the laws of the State of Indiana with a principal place of business located at 15 Mountainview Road in Warren, New Jersey 07059.

4.    Upon information and belief, Federal is a company principally engaged in

1

providing commercial, property and general liability insurance.  Federal sells its products and services in this judicial district and throughout the United States.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action pursuant to  28 U.S.C. §§1332(a)(1) and 2201(a).  Laurice and Federal are of diverse citizenship, and the sum in controversy exceeds $75,000, exclusive of interest and costs.

6.    This Court has personal jurisdiction over Federal pursuant to Fed. R. Civ. P. 4(k)(1)(A); and N.Y. C.P.L.R. §§ 302(a)(1), and 302(a)(2) and 302(a)(3).

7.    Venue lies in this judicial district pursuant to 28 U.S.C.§ 1391(a).  Federal does substantial business in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## THE INSURANCE POLICY

8.    In 2006, Laurice purchased a policy of commercial general liability insurance from Federal, namely Federal Policy No. 35825629 ("the CGL policy").  The CGL policy covered occurrences arising between 6/5/06 and 6/5/07, which covers the time period of all relevant events discussed herein.

9.    All premiums on the CGL policy have been paid, and the insured has met every condition required thereof.  As a result, the CGL policy remains in full force and effect.

10.    A true copy of the CGL policy is attached hereto as **Exhibit 1**.

2

11.    The CGL policy included at all relevant times coverage for "Advertising Injury."

The definition of "Advertising Injury" in the CGL Policy, as found on page 25

thereof, is as follows:

> "**Advertising Injury** means injury other than **bodily injury, property**
>
> **damage** or **personal injury,** sustained by a  person or organization and
>
> caused by an offense of infringing, in that particular part of your
>
> **advertisement** about your goods, products or services, upon their:
>
> - copyrighted **advertisement**; or
>
> - registered collective mark, registered service mark or other
>
>   registered trademarked name, slogan symbol or title."

12.    The definition of the term "advertisement" in the CGL policy, also found on page

25 thereof, is as follows:

> "**Advertisement** means an electronic, oral, written or other notice about
>
> goods, products or services, designed for the specific purpose of
>
> attracting the general public or a specific market segment top use such
>
> goods, products or services."

## THE UNDERLYING DISPUTE

13.    In the winter of 2006/2007, Laurice launched a new perfume named "Bryant

Park."  Laurice's "Bryant Park" perfume was sold in a bottle with a colorful design

on its face.

- 3 -

14. PUCCI is a registered U.S. Trademark currently owned by LVMH Fashion Group of France ("LVMH").

15. As part of the launch of Laurice's new "Bryant Park" perfume, Laurice created an advertising campaign that involved among other things, securing favorable mentions of the perfume in trade newspapers and magazines.

16. Two of the publications that Laurice contacted as part of its advertising campaign were *Women's Wear Daily* and *W* magazine.

17. In March of 2007, as a result of said contacts, *Women's Wear Daily* printed an article advertising Laurice's new "Bryant Park" fragrance. A true copy of this article is attached hereto as **Exhibit 2**.

18. In said article, which also pictures the Bryant Park bottle, Laurice Rahme is interviewed and refers to the bottle as "vintage Pucci-esque." The article states in relevant part:

> "With a 'vintage Pucci-esque' bottle featuring swirls of pink, lavender and black on a white background reflecting silk textiles of the late Fifties and Sixties, the packaging is just as daring as the fragrance itself, according to Rahme."

See 3rd paragraph of Exhibit 2.

19. In March of 2007, again as a result of the contacts by Laurice, an article appeared in *W* magazine advertising Laurice's "Bryant Park" fragrance. A true copy of this article is attached hereto as **Exhibit 3**.

- 4 -

20.  In said article, Laurice Rahme says of the Bryant Park perfume – " The Pucci spirit is timeless."  The article states in relevant part:

> A blend of rose, patchouli and pink pepper notes, Bryant Park comes packaged in a flashy, hot pink and purple Pucci-inspired bottle that would look at home on any front-row regular's dressing table.  "The Pucci spirit is timeless," Rahme says when asked why she chose the print.  "I could have picked Chanel, but they're a competitor of mine."

See Exhibit 3.

21.  On April 4, 2007, the Intellectual Property Director for LVMH sent a "cease and desist" letter to Laurice.  A true copy of this letter is attached hereto as **Exhibit 4**.

22.  In the April 4th letter, LVMH complains about Laurice's alleged trademark infringement of the registered trademark "PUCCI" in Laurice's advertising, and specifically complains about the "Pucci" references in said articles. Said letter states in relevant part:

> "Furthermore, it [referring to the harm caused Pucci] results from various press articles in renown Fashion magazines such as WWD (Exhibit C) or W (Exhibit D), that this copying, which is qualified of 'vintage Pucciesque" is intended to trade upon the fame and notoriety of Pucci, as illustrated by your own reference to "Pucci style [which you said] is timeless."

See Exhibit 4.

23.  Shortly thereafter, on April 30, 2007, LVMH sent another letter to Laurice's counsel.  A copy of this letter is attached hereto as **Exhibit 5**.  In that letter, LVMH supplemented its claim with additional allegations of infringement of its

registered trademark through various advertisements. Specifically, LVMH complained that Laurice infringed upon its "Pucci" trademark based on oral statements made by Laurice to the press and also in connection with the advertising that resulted in articles in WWD and W magazines.

24.    In its April 30th letter LVMH specifically alleged ---

> "We believe that your client [Laurice] could not come up with such a design for her products, selecting it without knowing the prior famous rights of Pucci. If not, how would you explain that she presented her perfume bottles to the media press, by using the PUCCI name and Trademark and or adding the word 'Pucciesque,' enhancing more confusion as to the source of the item?"

See Exhibit 5.

25.    LVMH further and separately complains in the April 30th letter that Laurice ---"used the 'PUCCI' name and Trademark on media articles," and --- "used the 'PUCCI' name and Trademark in connection with the sales of those infringing items."

See Exhibit 5.

26.    In its letters, LVMH demands that Laurice cease and desist from all "importation, manufacture (domestic and foreign,) offering for sale, sale, distribution, **advertising**, promotion and display" of the product, and LVMH asserts a specific demand for monetary damages. See Exhibit 4 and 5. LVMH also contacted Laurice's customers demanding that they drop and not fill Laurice's Bryant Park item.

27.    Laurice thereafter denied all of LVMH's demands while it pursued insurance coverage from Federal.

28.    After insurance coverage was denied by Federal as indicated herein, and faced with a potentially very costly litigation with a major company, and facing LVMH's demands to its customers, Laurice settled the dispute with LVMH by Agreement dated May 17, 2007.

29.    In the settlement with LVMH, Laurice agreed to cease and desist its sales of the product in question, and to pay LVMH a sum of money.  Laurice was also required by said settlement to destroy significant amounts of "Bryant Park" merchandise, of a value in excess of $100,000.   Laurice also incurred significant attorney fees in addressing, and then ultimately settling LVMH's claim

### FEDERAL'S IMPROPER DENIAL OF BOTH COVERAGE AND DEFENSE

30.    On April 16, 2007, by its counsel Laurice tendered LVMH's claim to Federal for coverage and defense through Federal's agent Mr. Fred Levy of the insurance agency Hamilton, Levy Miller & Co of West Hempstead, New York.  A copy of Laurice's tender letter is attached hereto as **Exhibit 6**.

31.    On May 9, 2007, Federal rejected the claim, denying both defense and indemnity.  In its denial letter, Federal stated in pertinent part that --- "the insured did not misappropriate the mark in their advertising."
A copy of Federal's denial letter is attached hereto as **Exhibit 7.**

32.    On May 15, 2007, Laurice's counsel wrote Federal asking it to reconsider its denial of defense and indemnity.  In so doing, Laurice's counsel directed Federal

to the references in the LVMH letters where LVMH complained specifically about

advertisements in which Laurice referenced and thereby infringed upon the Pucci

registered trademark in both written publications and/or in oral communications

relating to Laurice's products.  A copy of Laurice's counsel's May 15th letter is

attached hereto as **Exhibit 8**.

33.    On May 29, 2007, Federal responded to this letter.  Federal maintained its

denial, stating in pertinent part:

> "In your letter you state that the use of the "Pucci" name, which name is a
>
> registered trademark, in the various magazine articles and interviews
>
> about the new product, constitutes infringement of a registered trademark
>
> and thus is covered under the Federal policies.  Our review of the various
>
> trade articles and interviews reveals that the insured merely referenced
>
> the name "Pucci" as a description of her perfume bottle design.  The
>
> insured did not misappropriate the "Pucci" mark.  Accordingly, we do not
>
> believe that the reference of the name qualifies as trademark
>
> infringement."   (emphasis added)

A copy of this letter is attached hereto as **Exhibit  9**.

34.    On June 20, 2007, Laurice's counsel responded to Federal's denial and noted

that Federal's basis for rejection of coverage is improper as a matter of law.  The

letter further stated that ---

> "Chubb's belief as to whether Laurice engaged in trademark infringement
>
> is of little moment. The test to determine the existence of a qualifying
>
> claim in such a situation, is whether the adverse party has made a charge

of trademark infringement. The contents of the claim letters determine the

basis for a claim not the opinion of the insurance company."

A copy of this letter is attached hereto as **Exhibit 10**.

35.   On July 24, 2007, Federal's counsel responded and maintained Federal's denial.

Copies of this letters, and an additional letter of Laurice's counsel in response

thereto, are attached hereto as **Exhibit 11**

**COUNT I**
**(BREACH OF CONTRACT)**

36.   This is a cause of action for Breach of Contract under New York law.

37.   Laurice repeats and realleges the allegations of paragraphs 1 through 35 hereof

as if fully set forth herein.

38.   Pursuant to the terms of the CGL insurance policy, Federal was obligated to

cover and defend Laurice from any claim of "Advertising Injury" occurring within

the policy period.

39.   The claims asserted in the underlying dispute constitute "Advertising Injury"

under the definition of "Advertising Injury" contained in the CGL policy, and no

exclusion is applicable.

40.   Laurice made proper demand for coverage and defense of the underlying

litigation.

41.   Federal improperly refused to cover or defend Laurice in the underlying dispute.

42.   As a result, Federal has breached the terms of the CGL insurance policy.

43.   As a result of Federal's breach, Laurice has suffered damages in an amount in

excess of $500,000.

## COUNT II
### (BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

44.   This is a cause of action for breach of the implied duty of good faith and fair

dealing under New York law.

45.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through

43 hereof as if fully set forth herein.

46.   Federal's decision to refuse to defend and indemnify Laurice is more than an

arguable difference of opinion, and represents a gross disregard for its policy

obligations.

47.   As a result of Federal's bad faith as alleged herein, Laurice has suffered

damages in an amount in excess of $500,000.

WHEREFORE,   Plaintiff prays for judgment against Defendant as follows:

A.    With respect to Count I, for compensatory damages in an amount to be

proven at trial;

B.    With respect to Count II, for actual and punitive damages in an amount to be

proven at trial;

C.    With respect to Counts I and II, for pre-judgment interest on all awards of

damages;

D.    With respect to all claims, for the costs of suit incurred herein, including

reasonable attorney fees; and

E.    With respect to all claims, for such other and further relief as the Court may

deem just.

PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

Respectfully submitted,
GOTTLIEB, RACKMAN & REISMAN, P.C.
270 Madison Avenue
New York, New York 10016-0601

DATED:  December 5, 2007          By_____
                                        George Gottlieb (GG 5761)
                                        Richard S. Schurin (RS 0199)

**EXHIBIT 1**

CHUBB

## Liability Insurance

### Declarations

**Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059**

*Named Insured and Mailing Address*

LAURICE EL BADRY RAHME LTD. DBA LAURICE
& CO.
9 BOND STREET
NEW YORK, NY 10012

*Policy Number* 3582-56-29 LIO

*Effective Date* JUNE 5, 2006

*Issued by the stock insurance company
indicated below, herein called the company.*

**FEDERAL INSURANCE
COMPANY**

*Incorporated under the laws of
INDIANA*

*Producer No.* 0065641

*Producer* HAMILTON LEVY MILLER & CO INC.
644 WOODFIELD RD.B0X9063
WEST HEMPSTEAD, NY 11552-0000

---

## Policy Period

From: JUNE 5, 2006          To: JUNE 5, 2007
12:01 A.M. standard time at the Named Insured's mailing address shown above.

---

## Liability Coverage

## Limit Of Insurance

### GENERAL LIABILITY

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY AGGREGATE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 |
| MEDICAL EXPENSES LIMIT | $ 10,000 |

---

**Liability Coverage**
(continued)

**Limit Of Insurance**

*EMPLOYEE BENEFITS ERRORS OR OMISSIONS*

    AGGREGATE LIMIT                       $ 1,000,000

    EACH CLAIM LIMIT                    $ 1,000,000

    DEDUCTIBLE - EACH CLAIM                                          $ 1,000

    RETROACTIVE DATE                                             JUNE 5, 2003

# Liability Insurance

## General Liability

## Table Of Contents

| Section | Page No. |
|---|---|
| Coverages | 3 |
| Investigation, Defense And Settlements | 4 |
| Supplementary Payments | 4 |
| Coverage Territory | 5 |
| Who Is An Insured | 5 |
| Limits Of Insurance | 9 |
| Bodily Injury/Property Damage Exclusions | 10 |
| Advertising Injury/Personal Injury Exclusions | 14 |
| Medical Expenses Exclusions | 15 |
| Policy Exclusions | 16 |
| Conditions | 20 |
| Definitions | 25 |

THIS PAGE INTENTIONALLY LEFT BLANK

CHUBB

## General Liability

### Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; Exclusions; Conditions; and Definitions, as well as the Declarations, Common Policy Conditions and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the Named **Insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

## Coverages

**Bodily Injury And Property Damage Liability Coverage**

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

* imposed by law; or

* assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

**Advertising Injury And Personal Injury Liability Coverage**

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

* imposed by law; or

* assumed in an **insured contract**;

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

## Coverages
(continued)

**Medical Expenses
Coverage**

Subject to all of the terms and conditions of this insurance, we will pay **medical expenses** for **bodily injury** caused by an accident to which this coverage applies:

- that takes place on premises rented to or owned by you; or

- in connection with your operations;

provided that such:

- accident occurs during the policy period;

- expenses are incurred and reported to us within three (3) years of the date of the accident; and

- person who sustained such **bodily injury** submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

We will make these payments regardless of fault.

We have no other obligation or liability under this coverage.

## Investigation, Defense And Settlements

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless.

If such a **suit** is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend:

- the **insured**; and

- if applicable, the indemnittee of the **insured**, provided the obligation to defend, or the cost of the defense of, such indemnittee has been assumed by such **insured** in an **insured contract**.

Such attorney fees and litigation expenses will be paid as described in the Supplementary Payments section of this contract.

We have no duty to defend any person or organization against any **suit** seeking damages to which this insurance does not apply.

We may, at our discretion, investigate any **occurrence** or offense and settle any claim or **suit**.

Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

## Supplementary Payments

Subject to all of the terms and conditions of this insurance, we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

A.    the expenses we incur.

B.    the cost of:

   1.    bail bonds; or

   2.    bonds required to:

      a.    appeal judgments; or



## General Liability

**Supplementary Payments**
*(continued)*

    b.   release attachments;

but only for bond amounts within the available Limit Of Insurance. We do not have to furnish these bonds.

C.   reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1000 a day because of time off from work.

D.   costs taxed against the **insured** in the **suit**, except any:

    1.   attorney fees or litigation expenses; or

    2.   other loss, cost or expense;

in connection with any injunction or other equitable relief.

E.   prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

F.   interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

Supplementary Payments does not include any fine or other penalty.

These payments will not reduce the Limits Of Insurance.

Our obligation to make these payments ends when we have used up the applicable Limit Of Insurance.

---

**Coverage Territory**

This insurance applies anywhere, provided the **insured's** responsibility to pay damages, to which this insurance applies, is determined in a **suit** on the merits brought in the United States of America (including its possessions and territories), Canada or Puerto Rico, or in a settlement to which we agree.

---

## Who Is An Insured

*Sole Proprietorships*

If you are an individual, you and your spouse are **insureds**; but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

*   persons or organizations having proper temporary custody of your property are **insureds**; but they are **insureds** only with respect to the maintenance or use of such property and only for acts until your legal representative has been appointed; and

*   your legal representatives are **insureds**; but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

---

## Who Is An Insured
(continued)

*Partnerships Or Joint Ventures*

If you are a partnership (including a limited liability partnership) or a joint venture, you are an **insured**. Your members, your partners and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business.

*Limited Liability Companies*

If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds**; but they are **insureds** only with respect to their duties as your managers.

*Other Organizations*

If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds**; but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds**; but they are **insureds** only with respect to their liability as your stockholders.

*Employees*

Your **employees** are **insureds**; but they are **insureds** only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, no **employee** is an **insured** for:

A.  **bodily injury, advertising injury or personal injury:**

1.  to you, to any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or to any co-**employee** while such injured person is either in the course of his or her employment or while performing duties related to the conduct of your business;

2.  to the brother, child, parent, sister or spouse of such injured person as a consequence of any injury described in subparagraph A.1. above; or

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of any injury described in subparagraphs A.1. or A.2. above.

With respect to **bodily injury** only, this limitation does not apply to:

•   you or to your directors, managers, members, **officers**, partners or supervisors as **insureds**; or

•   your **employees**, as **insureds**, with respect to such damages caused by cardio-pulmonary resuscitation or first aid services administered by such an **employee**; or

B.  **property damage** to any property owned, occupied or used by you or by any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or by any of your **employees**.

This limitation does not apply to **property damage** to premises while rented to you or temporarily occupied by you with permission of the owner.



## General Liability

### Who Is An Insured
*(continued)*

**Volunteers**

Persons who are volunteer workers for you are **insureds**; but they are **insureds** only for acts within the scope of their activities for you and at your direction.

**Real Estate Managers**

Persons (other than your **employees**) or organizations acting as your real estate managers are **insureds**; but they are **insureds** only with respect to their duties as your real estate managers.

**Permissive Users Of Mobile Equipment**

With respect to **mobile equipment** registered in your name under a motor vehicle registration law:

A.  persons driving such equipment on a public road with your permission are **insureds**; and

B.  persons or organizations responsible for the conduct of such persons described in subparagraph A. above are **insureds**; but they are **insureds** only with respect to the operation of the equipment and only if no other insurance of any kind is available to them.

However, no person or organization is an **insured** with respect to:

*   **bodily injury** to any co-**employee** of the person driving the equipment; or

*   **property damage** to any property owned or occupied by or loaned or rented to you, or in your charge or the charge of the employer of any person who is an **insured** under this provision.

**Vendors**

Persons or organizations who are vendors of **your products** are **insureds**; but they are **insureds** only with respect to their liability for damages for **bodily injury** or **property damage** resulting from the distribution or sale of **your products** in the regular course of their business and only if this insurance applies to the **products-completed operations hazard**.

However, no such person or organization is an **insured** with respect to any:

*   assumption of liability by them in a contract or agreement. This limitation does not apply to the liability for damages for **bodily injury** or **property damage** that such vendor would have in the absence of such contract or agreement;

*   representation or warranty unauthorized by you;

*   physical or chemical change in **your products** made intentionally by the vendor;

*   repackaging, unless unpacked solely for the purpose of inspection, demonstration or testing, or the substitution of parts under instruction from the manufacturer and then repacked in the original container;

*   failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of **your products**;

*   demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of **your products**; or

*   of **your products** which, after distribution or sale by you, have been labeled or relabeled or used as a container, ingredient or part of any other thing or substance by or for the vendor.

## Who Is An Insured

*Vendors
(continued)*

Further, no person or organization from whom you have acquired **your products**, or any container, ingredient or part entering into, accompanying or containing **your products**, is an **insured** under this provision.

*Lessors Of Equipment*

Persons or organizations from whom you lease equipment are **insureds**; but they are **insureds** only with respect to the maintenance or use by you of such equipment and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

*   damages arising out of their sole negligence; or

*   **occurrence** that occurs, or offense that is committed, after the equipment lease ends.

*Lessors Of Premises*

Persons or organizations from whom you lease premises are **insureds**; but they are **insureds** only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

*   damages arising out of their sole negligence;

*   **occurrence** that occurs, or offense that is committed, after you cease to be a tenant in the premises; or

*   structural alteration, new construction or demolition operations performed by : on behalf of them.

*Subsidiary Or Newly
Acquired Or Formed
Organizations*

If there is no other insurance available, the following organizations will qualify as named **insureds**:

*   a subsidiary organization of the first named **insured** shown in the Declarations of which, at the beginning of the policy period and at the time of loss, such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization; or

*   a subsidiary organization of the first named **insured** shown in the Declarations that such first named **insured** acquires or forms during the policy period, if at the time of loss such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization.

*Limitations On Who Is An
Insured*

A.   Except to the extent provided under the Subsidiary Or Newly Acquired Or Formed Organizations provision above, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B.   No person or organization is an **insured** with respect to the:

1.   ownership, maintenance or use of any assets; or

2.   conduct of any person or organization whose assets, business or organization;



*General Liability*

## Who Is An Insured

**Limitations On Who Is An Insured (continued)**

you acquire, either directly or indirectly, for any:

- **bodily injury** or **property damage** that occurred; or
- **advertising injury** or **personal injury** arising out of an offense first committed;

in whole or in part, before you, directly or indirectly, aquired such assets, business or organization.

**Limits Of Insurance**

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

- **insureds**;
- claims made or **suits** brought; or
- persons or organizations making claims or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**General Aggregate Limit**

Subject to the Each Occurrence Limit, the General Aggregate Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage**, except damages included in the **products-completed operations hazard**; and
- **medical expenses**.

**Products-Completed Operations Aggregate Limit**

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of damages for **bodily injury** and **property damage** included in the **products-completed operations hazard**.

**Advertising Injury And Personal Injury Aggregate Limit**

The Advertising Injury And Personal Injury Aggregate Limit is the most we will pay for the sum of damages for **advertising injury** and **personal injury**.

**Each Occurrence Limit**

The Each Occurrence Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage**; and
- **medical expenses**;

arising out of any one **occurrence**.

Any amount paid for damages or **medical expenses** will reduce the amount of the applicable aggregate limit available for any other payment.

## *Limits Of Insurance*

*Each Occurrence Limit*
*(continued)*

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

*Damage To Premises*
*Rented To You Limit*

Subject to the Each Occurrence Limit, the Damage To Premises Rented To You Limit is the most we will pay for the sum of damages for **property damage** to any one premises while rented to you or temporarily occupied by you with permission of the owner.

*Medical Expenses Limit*

Subject to the Each Occurrence Limit, the Medical Expenses Limit is the most we will pay for the sum of **medical expenses**, under Medical Expenses coverage, for **bodily injury** sustained by any one person.

*Bodily Injury/Property*
*Damage Exclusions*

None of the following exclusions, except "Contracts", "Expected Or Intended Injury" and "Loss In Progress", apply to **property damage** to premises while rented to you or temporarily occupied by you with permission of the owner.

*Aircraft, Autos Or*
*Watercraft*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any:

*   aircraft;

*   **auto**; or

*   watercraft;

owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to:

A.  a watercraft while ashore on premises owned by or rented to you;

B.  a watercraft you do not own, provided that it:

    1.  is less than fifty-five (55) feet long; and

    2.  does not transport persons or cargo for a charge;

C.  the parking of an **auto** on premises owned by or rented to you, provided the **auto** is not owned by or loaned or rented to you or the **insured**;

D.  the liability for damages assumed in an **insured contract** resulting from the ownership, maintenance or use, by others, of an aircraft or watercraft;

E.  the operation of the equipment described in subparagraphs F.2. or F.3. of the definition of **mobile equipment**; or

F.  an aircraft you do not own, provided that:

    1.  the pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;



## Bodily Injury/Property Damage Exclusions

**Aircraft, Autos Or Watercraft**
*(continued)*

2.  it is rented with a trained, paid crew; and

3.  it does not transport persons or cargo for a charge

**Alcoholic Beverage Type Businesses**

This insurance does not apply to **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

*   causing or contributing to the intoxication of any person;

*   furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

*   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**Contracts**

This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.

This exclusion does not apply to the liability for damages:

*   that such **insured** would have in the absence of such contract or agreement; or

*   assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage**, to which this insurance applies, occurs after the execution of such contract or agreement.

**Damage To Alienated Premises**

This insurance does not apply to **property damage** to any premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises.

This exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

**Damage To Impaired Property Or Property Not Physically Injured**

This insurance does not apply to **property damage** to:

*   **impaired property**; or

*   property that has not been physically injured;

arising out of any:

*   defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

**Bodily
Injured/Property
Damage Exclusions**

*Damage To Impaired
Property Or Property Not
Physically Injured
(continued)*

- delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

*Damage To Owned
Property*

This insurance does not apply to **property damage** to any property owned by you.

*Damage To Various
Property Of Others (Care,
Control Or Custody)*

This insurance does not apply to **property damage** to any:

- personal property loaned or rented to you;

- property held by you or on your behalf for sale or entrusted to you for safekeeping or storage;

- property on your premises for purposes of performing operations on such property by you or on your behalf;

- tools or equipment used by you or on your behalf in performing operations; or

- property in your care, control or custody that will be erected, installed or used in construction operations by you or on your behalf.

This exclusion does not apply to the liability for damages assumed in a sidetrack agreement.

*Damage To Your Product*

This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

*Damage To Your Work*

This insurance does not apply to **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

This exclusion does not apply if the damaged work or the work causing the damage was performed on your behalf by a subcontractor.

*Employer's Liability*

A.  This insurance does not apply to **bodily injury** to an **employee** of the **insured** arising out of and in the course of:

   1.  employment by the **insured**; or

   2.  performing duties related to the conduct of the **insured**'s business.

B.  This insurance does not apply to **bodily injury** to the brother, child, parent, sister or spouse of such **employee** as a consequence of any injury described in paragraph A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and

- to any obligation to share damages with or repay someone else who must pay damages because of any injury described in paragraphs A. or B. above.

Liability Insurance



*General Liability*

---

## Bodily Injured/Property Damage Exclusions

**Employer's Liability (continued)**

This exclusion does not apply to the liability for damages assumed by the **insured** in an **insured contract**.

**Expected Or Intended Injury**

This insurance does not apply to **bodily injury** or **property damage** arising out of an act that:

- is intended by the **insured**; or

- would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;

to cause **bodily injury** or **property damage**, even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or tangible property.

**Loss In Progress**

This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any **bodily injury** or **property damage** known by you, prior to the beginning of the policy period, to have occurred.

**Bodily injury** or **property damage** will be deemed to be known by you:

A. if such injury or damage is known by, or should have been known from the standpoint of a reasonable person in the circumstances of:

1. you;

2. any of your directors, managers, members, **officers** (or their designees) or partners (whether or not an **employee**); and

B. when any person described in paragraph A. above:

1. reports all, or any part, of any such injury or damage to us or any other insurer;

2. receives a claim or a demand for damages because of any such injury or damage; or

3. becomes aware that any such injury or damage has occurred or has begun to occur.

**Mobile Equipment Transportation**

This insurance does not apply to **bodily injury** or **property damage** arising out of the transportation of **mobile equipment** by an **auto** owned or operated by or loaned or rented to any **insured**.

---

## Advertising Injury/Personal Injury Exclusions

**Breach Of Contract**

This insurance does not apply to **advertising injury** or **personal injury** arising out of breach of contract.

**Continuing Offenses**

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.   this insurance; or

B.   a subsequent, continuous renewal or replacement of this insurance, that:

    1.   is issued to **you** by **us** or by an affiliate of ours;

    2.   remains in force while the offense continues; and

    3.   would otherwise apply to **advertising injury** and **personal injury**.

**Contracts**

This insurance does not apply to **advertising injury** or **personal injury** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.

This exclusion does not apply to the liability for damages:

- that such **insured** would have in the absence of such contract or agreement; or

- assumed in a written contract or agreement that is an **insured contract**, provided the **advertising injury** or **personal injury**, to which this insurance applies, is caused by an offense first committed after the execution of such contract or agreement.

**Crime Or Fraud**

This insurance does not apply to **advertising injury** or **personal injury** arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the **insured**.

**Expected Or Intended Injury**

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or on behalf of the **insured**, that:

- is intended by such **insured**; or

- would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;

to cause injury.

**Failure To Conform To Representations Or Warranties**

This insurance does not apply to **advertising injury** or **personal injury** arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use.

**Internet Activities**

This insurance does not apply to **advertising injury** or **personal injury** arising out of:

- controlling, creating, designing or developing of another's Internet site;

CHUBB

## General Liability

**Advertising Injury/Personal Injury Exclusions**

*Internet Activities (continued)*

* controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;

* controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or

* publication of content or material on or from the Internet, other than material developed by you or at your direction.

*Media Type Businesses*

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense committed by or on behalf of an **insured** whose business is advertising, broadcasting, cablecasting, publishing, telecasting or telemarketing.

This exclusion does not apply to **personal injury** caused by an offense described in subparagraphs A., B. or C. of the definition of **personal injury**.

*Prior Offenses*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense first committed before the beginning of the policy period.

*Publications With Knowledge Of Falsity*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of content or material by or with the consent of the **insured**:

* with knowledge of its falsity; or

* if a reasonable person in the circumstances of such **insured** would have known such content or material to be false.

*Wrong Description Of Prices*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any wrong description of the price of goods, products or services.

**Medical Expenses Exclusions**

*Athletic Activities*

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person injured while taking part in athletics.

*Injury To Insureds*

This insurance does not apply to **medical expenses** arising out of a **bodily injury** to any **insured**, except a volunteer worker.

**Medical Expenses
Exclusions**
*(continued)*

*Nuclear Energy*

This insurance does not apply to **medical expenses** arising out of **bodily injury** in any way related to the:

* **nuclear hazardous properties** of **nuclear material**; and

* operation of a **nuclear facility** by any person or organization.

*Products-Completed
Operations Hazard*

This insurance does not apply to **medical expenses** arising out of **bodily injury** included in the **products-completed operations hazard**.

*Workers' Compensation
Or Similar Laws*

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person, whether or not an **employee** of any **insured**, if benefits for such **bodily injury** are payable or must be provided under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Policy Exclusions

*Asbestos*

A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B.  This insurance does not apply to any loss, cost or expense arising out of any:

    1.  request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos**; or

    2.  claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.

*Employment-Related
Practices*

A.  This insurance does not apply to any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

    1.  arrest, detention or imprisonment;

    2.  breach of any express or implied covenant;

    3.  coercion, criticism, humiliation, prosecution or retaliation;

    4.  defamation or disparagement;

    5.  demotion, discipline, evaluation or reassignment;

    6.  discrimination, harassment or segregation;

 CHUBB

*General Liability*

## Policy Exclusions

**Employment-Related Practices**
*(continued)*

7.  a.  eviction; or

    b.  invasion or other violation of any right of occupancy;

8.  failure or refusal to advance, compensate, employ or promote;

9.  invasion or other violation of any right of privacy or publicity;

10.  termination of employment; or

11.  other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B.  This insurance does not apply to any damages sustained at any time by the brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph A. above, as a consequence thereof.

This exclusion applies:

*   whether the **insured** may be liable as an employer or in any other capacity; and

*   to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

**Enhancement, Maintenance Or Prevention Expenses**

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

A.  enhancement or maintenance of any property; or

B.  prevention of any injury or damage to any:

    1.  person or organization; or

    2.  property you own, rent or occupy.

**Intellectual Property Laws Or Rights**

This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

*   assertion; or

*   infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

*   is caused by an offense described in the definition of **advertising injury** (and

*   does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.

**Policy Exclusions**
(continued)

Nuclear Energy

A.  This insurance does not apply to **bodily injury, nuclear property damage, advertising injury** or **personal injury**:

   1.  with respect to which any **insured** under this policy also has status as an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would have had status as an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

   2.  arising out of the **nuclear hazardous properties of nuclear material** and with respect to which:

       a.  any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amendatory thereof; or

       b.  the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  This insurance does not apply to **bodily injury, nuclear property damage, advertising injury** or **personal injury** arising out of the **nuclear hazardous properties** of **nuclear material**:

   1.  if the **nuclear material**:

       a.  is at any **nuclear facility** owned by, or operated by or on behalf of, any **insured**;

       b.  has been discharged or dispersed therefrom; or

       c.  is contained in **nuclear spent fuel** or **nuclear waste** at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **insured**; or

   2.  in any way related to the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this subparagraph 2. applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

Pollution

A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

   1.  at or from any premises, site or location which is or was at any time owned or occupied by, or loaned or rented to, any **insured**;

   2.  at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

Liability Insurance

CHUBB

## General Liability

## Policy Exclusions

Pollution
(continued)

3.  which are or were at any time transported, handled, stored, disposed of, processed or treated as waste by or for any:

    a.  **insured**; or

    b.  person or organization for whom any **insured** may be legally responsible; or

4.  at or from any premises, site or location on which any **insured** or any contractor or subcontractor working directly or indirectly on any **insured**'s behalf is performing operations, if the:

    a.  **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

    b.  operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

Subparagraph A.4.a. above does not apply to **bodily injury** or **property damage** caused by the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such operating fluids escape directly from that particular part of such **mobile equipment** designed by its manufacturer to hold, store or receive them. But, this exception does not apply if such **bodily injury** or **property damage** arises out of any discharge, dispersal, seepage, migration, release or escape of **pollutants**, that:

*   was intended by the **insured**;

*   would have been expected from the standpoint of a reasonable person in the circumstances of the **insured**;

*   was a necessary part of operations performed by any **insured**, contractor or subcontractor; or

*   occurred during the process of fueling the **mobile equipment** or changing or replenishing any operating fluid.

Subparagraph A.4.a. above does not apply to **bodily injury** or **property damage** if sustained within a building and caused by the release of gaseous irritants or contaminants from materials brought into that building, in connection with the operations being performed by you or on your behalf by the contractor or subcontractor.

Subparagraph A.1. above does not apply to **bodily injury** if sustained within a building and caused by the escape of gaseous irritants or contaminants from equipment used to heat that building.

Subparagraphs A.1. and A.4.a. above do not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**.

B.  This insurance does not apply to any loss, cost or expense arising out of any:

1.  request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

## Policy Exclusions

**Pollution**
**(continued)**

2.  claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

Paragraph B. above does not apply to the liability for damages, for **property damage**, that the **insured** would have in the absence of such request, demand, order or regulatory or statutory requirement, or such claim or proceeding by or on behalf of a governmental authority.

This exclusion does not apply to the liability for damages, for **property damage**, to premises while rented to you or temporarily occupied by you with permission of the owner and caused by a **hostile fire**, explosion, smoke or leakage from fire protective equipment.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

**Recall Of Products, Work Or Impaired Property**

This insurance does not apply to any damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

*   **your product**;

*   **your work**; or

*   **impaired property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Workers' Compensation Or Similar Laws**

This insurance does not apply to any obligation of the **insured** under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Conditions

**Arbitration**

We are entitled to exercise all of the **insured**'s rights in the choice of arbitrators and in the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

**Bankruptcy**

Bankruptcy or insolvency of the **insured** or of the **insured**'s estate will not relieve us of our obligations under this insurance.

CHUBB

*General Liability*

## Conditions
*(continued)*

*Disclosures And Representations*

We have issued this insurance:

- based upon representations you made to us; and

- in reliance upon your representations.

Unintentional failure of an **employee** of the **insured** to disclose a hazard or other material information will not violate this condition, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee knows about such hazard or other material information.

*Duties In The Event Of Occurrence, Offense, Claim Or Suit*

A. You must see to it that we and any other insurers are notified as soon as practicable of any **occurrence** or offense that may result in a claim, if the claim may involve us or such other insurers. To the extent possible, notice should include:

1. how, when and where the **occurrence** or offense happened;

2. the names and addresses of any injured persons and witnesses; and

3. the nature and location of any injury or damage arising out of the **occurrence** or offense.

B. If a claim is made or **suit** is brought against any **insured**, you must:

1. immediately record the specifics of the claim or **suit** and the date received;

2. notify us and other insurers as soon as practicable; and

3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C. You and any other involved **insured** must:

1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

2. authorize us to obtain records and other information;

3. cooperate with us and other insurers in the:

   a. investigation or settlement of the claim; or

   b. defense against the **suit**; and

4. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **insured** because of loss to which this insurance may also apply.

D. No **insureds** will, except at that **insured**'s own cost, make any payment, assume any obligation or incur any expense, other than for first aid, without our consent.

E. Notice given by or on behalf of:

1. the **insured**;

2. the injured person; or

3. any other claimant;

to a licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

## *Conditions*

*Duties In The Event Of Occurrence, Offense, Claim Or Suit (continued)*

F.   Knowledge of an **occurrence** or offense by an agent or **employee** of the **insured** will not constitute knowledge by the **insured**, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee knows about such **occurrence** or offense.

G.   Failure of an agent or **employee** of the **insured**, other than an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee, to notify us of an **occurrence** or offense that such person knows about will not affect the insurance afforded to you.

H.   If a claim or loss does not reasonably appear to involve this insurance, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the **insured** gives us immediate notice as soon as the **insured** is aware that this insurance may apply to such claim or loss.

*Legal Action Against Us*

No person or organization has a right under this insurance to:

*   join us as a party or otherwise bring us into a **suit** seeking damages from an **insured**; or

*   sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual:

*   trial in a civil proceeding; or

*   arbitration or other alternative dispute resolution proceeding;

but we will not be liable for damages that are not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

*Other Insurance*

If other valid and collectible insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows.

*Primary Insurance*

This insurance is primary except when the Excess Insurance provision described below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in the Method of Sharing provision described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

A.   that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for **your work**;

B.   that is insurance that applies to **property damage** to premises rented to you or temporarily occupied by you with permission of the owner;

C.   if the loss arises out of aircraft, **autos** or watercraft (to the extent not subject to the Aircraft, Autos Or Watercraft exclusion);



**CHUBB**

## General Liability

## Conditions

**Other Insurance**
**(continued)**

D.  that is insurance:

    1.  provided to you by any person or organization working under contract or agreement for you; or

    2.  under which you are included as an insured; or

E.  that is insurance under any Property section of this policy.

When this insurance is excess, we will have no duty to defend the **insured** against any **suit** if any other insurer has a duty to defend such **insured** against such **suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured**'s rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of the total:

*   amount that all other insurance would pay for loss in the absence of this insurance; and

*   of all deductible and self-insured amounts under all other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not negotiated specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

### Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**Premium Audit**

We will compute all premiums for this insurance in accordance with our rules and rates.

In accordance with the Estimated Premiums section of the Premium Summary, premiums shown with an asterisk (*) are estimated premiums and are subject to audit.

In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums elsewhere in this policy. In that case, these premiums will also be subject to audit, and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

**Separation Of Insureds**

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies:

*   as if each named **insured** were the only named **insured**; and

*   separately to each **insured** against whom claim is made or **suit** is brought.

## Conditions
(continued)

*Transfer Or Waiver Of
Rights Of Recovery
Against Others*

We will waive the right of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the **insured** has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the **insured**'s rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

This condition does not apply to **medical expenses**.



CHUBB

## General Liability

**Definitions**

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

**Advertisement**

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

**Advertising Injury**

**Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

• copyrighted **advertisement**; or

• registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

**Agreed Settlement**

**Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

**Asbestos**

**Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

**Auto**

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

**Bodily Injury**

**Bodily injury** means physical:

• injury;

• sickness; or

• disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

**Employee**

**Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

**Hostile Fire**

**Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.



| **Definitions** | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS |
|---|---|
| (continued) | AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS |
|  | DESCRIBED BELOW: |

*Impaired Property*    **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

- it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

- you have failed to fulfill the terms or conditions of a contract or agreement;

if such property can be restored to use by:

- the repair, replacement, adjustment or removal of **your product** or **your work**; or

- your fulfilling the terms or conditions of the contract or agreement.

*Insured*    **Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.

*Insured Contract*    **Insured contract:**

A.    means:

    1.    a lease of premises;

    2.    a sidetrack agreement;

    3.    an easement or license agreement;

    4.    an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    5.    an elevator maintenance agreement; or

    6.    any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for such municipality) in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization.

B.    does not include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for damages arising out of:

    1.    preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications; or

    2.    giving directions or instructions, or failing to give them.



CHUBB

## General Liability

**Definitions**
(continued)

**Intellectual Property Law Or Right**

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);

- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

**Leased Worker**

**Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. **Leased worker** does not include a **temporary worker**.

**Loading Or Unloading**

**Loading** or **unloading**:

A. means the handling of property;

    1. after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;

    2. while it is in or on an aircraft, **auto** or watercraft; or

    3. while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

B. does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

**Medical Expenses**

**Medical expenses** means reasonable expenses for necessary:

- first aid administered at the time of an accident;

- medical, surgical, x-ray and dental services, including prosthetic devices; and

- ambulance, hospital, professional nursing and funeral services.

**Mobile Equipment**

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B. vehicles maintained for use solely on premises owned by or rented to you;

C. vehicles that travel on crawler treads;

| **Definitions** | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
|---|---|

*Mobile Equipment (continued)*

D.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    1.    power cranes, shovels, loaders, diggers or drills; or

    2.    road construction or resurfacing equipment such as graders, scrapers or rollers;

E.    vehicles not described in subparagraphs A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    1.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    2.    cherry pickers and similar devices used to raise or lower workers; and

F.    vehicles not described in subparagraphs A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo.

**Mobile equipment** does not include self-propelled vehicles with the following types of permanently attached equipment, and such vehicles will be considered **autos**:

    1.    equipment designed primarily for:

        a.    snow removal;

        b.    road maintenance, but not construction or resurfacing; or

        c.    street cleaning;

    2.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    3.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

*Nuclear Facility*

**Nuclear facility** means any:

A.    **nuclear reactor**;

B.    equipment or device designed or used for:

    1.    separating the isotopes of plutonium or uranium;

    2.    processing or utilizing **nuclear spent fuel**; or

    3.    handling, processing or packaging **nuclear waste**;

C.    equipment or device used for the processing, fabricating or alloying of **nuclear material**, if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than:

    1.    twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or

    2.    two-hundred-fifty (250) grams of uranium 235; or



## General Liability

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**Nuclear Hazardous Properties**

**Nuclear hazardous properties** includes radioactive, toxic or explosive properties.

**Nuclear Material**

**Nuclear material** means **by-product material, source material** or **special nuclear material**.

**By-product material, source material** and **special nuclear material** have the meanings given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

**Nuclear Property Damage**

**Nuclear property damage** includes all forms of radioactive contamination of property.

**Nuclear Reactor**

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**Nuclear Spent Fuel**

**Nuclear spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

**Nuclear Waste**

**Nuclear waste** means any waste material:

* containing **nuclear material**, other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

* resulting from the operation by any person or organization of any **nuclear facility** described in subparagraphs A. or B. of the definition of **nuclear facility**.

**Occurrence**

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Officer**

**Officer** means a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any other similar governing document.

| **Definitions**<br>(continued) | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
|---|---|

Personal Injury

**Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

A.   false arrest, false detention or other false imprisonment;

B.   malicious prosecution;

C.   wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;

D.   electronic, oral, written or other publication of material that:

   1.   libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

   2.   violates a person's right of privacy; or

E.   discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

Pollutants

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Products-Completed
Operations Hazard

**Products-completed operations hazard:**

A.   includes all **bodily injury** and **property damage** taking place away from premises owned or occupied by or loaned or rented to you and arising out of **your product** or **your work**, except:

   1.   products that are still in your physical possession; or

   2.   work that has not yet been completed or abandoned.

**Your work** will be deemed completed when:

•   all of the work called for in your contract or agreement has been completed.

•   all of the work to be performed at the site has been completed, if your contract or agreement calls for work at more than one site.

•   that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

B.   does not include **bodily injury** or **property damage** arising out of:

   1.   the transportation of property, unless the injury or damage results from a condition in or on a vehicle not owned or operated by or loaned or rented to you and that condition was created by the **loading or unloading** of that vehicle by any **insured**;



**Products-Completed Operations Hazard (continued)**

2.   the existence of tools, uninstalled equipment or abandoned or unused materials; or

3.   products or operations for which the classification in our rules indicates that such products or operations are not subject to the Products-Completed Operations Aggregate Limit of insurance.

---

**Property Damage**

**Property damage** means:

*   physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

*   loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

---

**Suit**

**Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent.

---

**Temporary Worker**

**Temporary worker** means a person who is furnished to a party to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

---

**Your Product**

**Your product:**

A.   means any:

    1.   goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.   you;

        b.   others trading under your name; or

        c.   a person or organization whose assets or business you have acquired; and

    2.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

B.   includes:

    1.   representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product**; and

    2.   the providing of or failure to provide instructions or warnings.

C.   does not include vending machines or other property loaned or rented to or located for the use of others but not sold.

---

**_Definitions_**
_(continued)_

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS
AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS
DESCRIBED BELOW:

_Your Work_

**Your work:**

A.   means any:

   1.   work or operations performed by:

     a.   you or on your behalf; or

     b.   a person or organization whose assets or business you have acquired; and

   2.   materials, parts or equipment furnished in connection with such work or operations.

B.   includes:

   1.   representations or warranties made at any time with respect to the durability, fitness,
performance, quality or use of **your work**; and

   2.   the providing of or failure to provide instructions or warnings.

**EXHIBIT 2**

WWD, THURSDAY, MARCH 29, 2007  11

WWD.COM

# Bond No. 9 Pays Tribute to Bryant Park

**By Michelle Edgar**

Niche fragrance house Bond No. 9 is honoring the long-time host of New York's fashion week with a new scent for women called Bryant Park.

"We wanted to immortalize it and make it a souvenir — a remembrance of fashion week being held there for so many years," said Laurice Rahme, owner and founder of Bond No. 9.

With a "vintage Pucci-esque" bottle featuring swirls of pink, lavender and black on a white background reflecting silk textiles of the late Fifties and Sixties, the packaging is just as daring as the fragrance itself, according to Rahme.

"I didn't want to create a discreet scent but something that was more outgoing and forward that could be worn from day to night," said Rahme. "The juice is just as spicy as the bottle. It's noisy and loud like fashion week."

Launching in the U.S. this month, Bryant Park is a "rose patchouli" scent. Bond No. 9's last fragrance, West Side, was a "gourmand rose." Rahme decided to create a series of rose fragrances because the "rose trend" had become increasingly popular among younger consumers. Rahme added that she's considering a "spicy fresh rose" scent for the series' next fragrance.

"[Rose] is a symbol of femininity," said Rahme. "There are so many twists and interpretations you can do on the rose. Since niche perfumery houses started reintroducing the scent, it has attracted a much younger consumer. When we saw how West Side sold out, we realized it was safe to do another rose."



The Bryant Park fragrance.

**BEAUTY BEAT**

Created by Michel Almairac of Robertet, Bryant Park features top notes of lily of the valley, rhubarb and pink pepper; middle notes of rose and patchouli, and base notes of raspberry and amber. The fragrance will roll out internationally in Bond No. 9's 12 markets beginning in May.

Bryant Park is Bond No. 9's 28th scent and could make up to $2 million in first-year sales, according to Rahme.

Bryant Park will retail at $185 for a 3.4-oz. bottle and $125 for a 1.7-oz. bottle. The scent will also be available for $45 for 1 oz. in a spray flacon. It will be sold at Bond No. 9's four New York boutiques, in 27 Saks Fifth Avenue doors and in about a dozen boutiques and spas worldwide including the U.K., Hong Kong and Dubai. The fragrance will also be merchandised on Bond No. 9's e-commerce Web site bondno9.com, which launched last summer.

A monthlong preview of the fragrance kicked off during fashion week last month. According to Rahme, Bond No. 9 distributed 10,000 samples of the fragrance during the week's shows and events.

The company also broke a print advertising campaign in The New York Times last month, which will be followed by ads in W magazine in April and May. In addition, Saks Fifth Avenue's catalogue featured a two-page scented insert of Bryant Park, and more than 60,000 samples will be distributed through the retailer's stores beginning this month.

There are also plans to open three more Bond No. 9 boutiques in Manhattan's Harlem, Chelsea and Wall Street neighborhoods by the end of the year. A second Bond No. 8 boutique opened in Dubai and the company is looking to enter new markets in Spain, Switzerland and Japan, according to Rahme.

Rahme projects the firm will reach $30 million in total revenue — 65 percent of which is expected to be domestic — by yearend. She also expects a 50 percent increase in export business.

Rahme won't be stopping there, though. This fall, the company plans to enter the bath and body category with a launch of body oils, creams and lotions.

## Donatella Goes to London

**LONDON** — London experienced some Milan-style glam Tuesday when Donatella Versace swept into town to promote the fashion house's new signature fragrance.

"I do love London," murmured the diminutive designer as she surveyed the city from the penthouse suite at The Dorchester hotel, where she hosted a cocktail party.

It was a moment of peace before a media storm broke later that night regarding the health of Versace's daughter, Allegra. (See related story, page 3.)

And London sure loved her. Donatella-mania swept Harrods earlier that day when she showed up to sign bottles of the scent.

"I couldn't believe when I heard she was coming," said 20-year-old fashion student Jayne Heasley. "I'm a big fan of Versace, obviously."

"I'm a big fan of her clothes and she's amazingly beautiful," said 16-year-old Michael Matic, from Copenhagen who was in London on vacation. "It's an honor to meet her."

"I'm overwhelmed by the amount of people who came today," said Versace as curious shoppers strained to snap pictures with mobile phones. "The people who come are always happy to see me. I always ask myself why they like me so much."

— *Brid Costello*

## Rosiner Named to Clarins Board

**PARIS** — Serge Rosinner has been named chairman of Groupe Clarins' advisory board. He succeeds Jacques Courtin-Clarins, the French beauty firm's founder, who died on March 22.

Rosinner has been a member of the company's advisory board since 2000. He has held numerous roles within Clarins' management board, most recently acting as its chairman.

Before joining Clarins in 1978, he was chief executive officer of Max Factor Europe.

# EXHIBIT 3

favorite designer boutiques. Increasingly, the top labels are discovering that the surest way to a customer's wallet is through her stomach. Last November Gucci opened a café in its new Tokyo flagship; in November Hong Kong's Lane Crawford unveiled its "chocolate room"; Dolce & Gabbana has started offering martinis at its new Shanghai shop; and in Tokyo's Ginza district, the newly revamped Hermès flagship boasts an in-shop boîte that serves coffee and confections—on Hermès china, *naturellement*. Later this year, Parisian pastry haven Ladurée will open in Tokyo's Mitsukoshi department store and Kuwait's Villa Moda. (American macaroon fans should note that Ladurée will also be opening in New York's renovated Plaza Hotel.) One question remains: Will designers have to offer larger sizes to accommodate their customers' expanding waistlines?



## Sweet Smell of Style

"It's not discreet. It's not quiet," says Bond No. 9 founder Laurice Rahmé of her latest scent, Bryant Park. "It's for people who are not afraid to be daring and audacious." Clearly Rahmé knows a thing or two about the crowd that fills the park's tents twice a year for New York Fashion Week.

A blend of rose, patchouli and pink pepper notes, Bryant Park comes packaged in a flashy, hot pink and purple Pucci-inspired bottle that would look at home on any front-row regular's dressing table. "The Pucci spirit is timeless," Rahmé says when asked why she chose the print. "I could have picked Chanel, but they're a competitor of mine."

The spritz may smell delicious, but there's a strange twist in this fragrance launch: This past fall Bryant Park honchos, complaining that the shows are too disruptive, requested that Fashion Week look for a new home. Rahmé isn't worrying about it. If the relocation does come to pass, she hopes her customers will consider her new scent "a souvenir."        —Emily Holt



An American Apparel store

### AN AMERICAN SALE
Dov Charney, the perennially outspoken founder of Los Angeles–based American Apparel, has created a worldwide phenomenon with his colorful T-shirts, sexually charged advertising campaigns and rapidly growing chain of boutiques. While the brand's more outré offerings—gold Lurex bodysuit, anyone?—might make conservative Wall Streeters cringe, they're apparently not enough to blind financial types to the label's potential. In mid-December, Charney inked a $383.5 million deal to merge his T-shirt empire with New York–based specialized acquisition company Endeavor Acquisition Corp. "I want to open up more stores in Hong Kong, Glasgow and Dublin, and I can't do it without money," Charney said. Still, he insisted, "it doesn't mean people are going to come into the office wearing suits and ties."



Top: Bond No. 9's new Bryant Park fragrance. Above: Bond's New York flagship.

# EXHIBIT 4

_ V M ┤ FASHION GROU-

Bond N°9
Mrs Laurice Rahme
9 Bond Street
New York, NY 10012
USA

April 4, 2007

*By Express mail*

**RE: BOND N°9 Bryant Park Perfume – Unauthorized use of EMILIO PUCCI's Occhi Print**

Dear Mrs Rahme,

We represent Emilio Pucci SRL and Emilio Pucci, B.V. (collectively "Pucci")., which are part of LVMH, the World's Leading Luxury Products Group.

It is well established that Pucci has gained a worldwide renown for distinctive, innovative and high quality women's fashion apparel and accessory designs.

Known for over 30 years as the "Prince of prints", Emilio Pucci's creations are feminine, glamorous and cheerful, featuring electric combinations of motifs. Of the many awards Emilio Pucci received, the last one bestowed in his lifetime was the Council of Fashion designer of America Award in 1990.

The fame and notoriety of Pucci prints is the result of a unique and distinctive design and has been established not only through widespread and extensive sales, promotion of the distinctive Pucci fashion accessory designs, but also through extraordinary unsolicited international media notoriety garnered in leading fashion magazines and news periodicals.

Recently, we learned that your company just launched a new perfume named "Bryant Park"(Exhibit A) which bottle unmistakably mimic one of the famous Pucci prints created in the 70's known as the "Occhi" print (Exhibit B).

This situation is all the more detrimental that Pucci has revived the public's interest in the Occhi print by republishing it in its Fall-Winter 2007/2008 collection.

Furthermore, it results from various press articles in renown Fashion magazines such as WWD (Exhibit C) or W (Exhibit D), that this copying, which is qualified of "vintage Pucci-esque" is intended to trade upon the fame and notoriety of Pucci, as illustrated by your own reference to "PUCCI style [which you said] is timeless".

This unauthorized use of the Pucci's Occhi print infringes on Pucci's intellectual property rights and incorrectly suggests that the Bond N°9 Bryant Park perfume originates with or is licensed, authorized or sponsored by Pucci, when it is not.

LVMH FASHION GROUP

On behalf of Pucci, we demand that:

1. You immediately cease and desist any use of the Occhi print and in particular any and all importation, manufacture (domestic and foreign), offering for sale, sale, distribution, advertising, promotion and display of the Bryant Park perfume as shown in Exhibit A.

2. You surrender all samples of the Bryant Park perfume in your possession, custody or control;

3. You provide the names and addresses of any and all persons to whom the Bryant Park perfume has been distributed or sold or by whom orders for any such items have been placed, and the details of such sales and orders, including total dollar amounts;

4. You provide copies of any and all correspondence received or sent by you concerning the Bryant Park perfume, including but not limited to consumer inquiries and complaints or agreements between Bond N°9, and any seller or vendor of the Bryant Park perfume;

5. You provide the total dollar amounts you have earned or which are due to you as a result of the sales of the Bryant Park perfume.

Unless we are advised by you or your counsel in writing within five (5) business days after your receipt of this letter that the distribution of the Bryant Park perfume has been halted and unless we receive from you or your counsel the additional information requested within the same period, Pucci reserves the possibilities to take all necessary steps to protect its rights.

This letter is written without prejudice to the rights and claims of Pucci, all of which are hereby expressly reserved.

Sincerely yours,

Nathalie Moullé-Berteaux
Intellectual Property Director

Encls

Exhibit A



Exhibit B



Exhibit C

# Bond No. 9 Pays Tribute to Bryant Park



Exhibit D





an American Apparel store

**H&M AMERICAN SALE**
Dov Charney, the potentially outspoken founder of Los Angeles–based American Apparel, has created a sexual soft-pheromone with his colorful T-shirts, sexually charged advertising campaigns and readily available half-clad images. While his wares have made headlines...

## Sweet Smell of Style

"It's not discreet. It's not quiet," says Bond No. 9 founder Laurice Rahmé of her latest scent, Bryant Park. "It's for people who are not afraid to be daring and audacious." Clearly Rahmé knows a thing or two about the crowd that fills the park's tents twice a year for New York Fashion Week.

A blend of rose, patchouli and pink pepper notes, Bryant Park comes packaged in a flashy, hot pink and purple Pucci-inspired bottle that would look at home on any front-row regular's dressing table. "The Pucci spirit is timeless," Rahmé says when asked why she chose the print. "I could have picked Chanel, but they're a competitor of mine."

The spirits may smell delicious, but there's a strange twist to this fragrance launch: This past fall Bryant Park honchos, commenting that the tents are not durable, requested that fashion week look for a new home. Rahmé isn't worrying about this relocation; she's come to paint. She hopes her customers will consider her new scent "a souvenir."    —Emily Holt



**EXHIBIT 5**

# LOUIS VUITTON NORTH AMERICA, INC.

**By E-Mail and Fax**

April 30, 2007

Mr. George Gottlieb
Gottlieb, Rackman & Reisman, P.C.
270 Madison Avenue
New York, NY 10016-0601

## Re: Infringement of the Pucci Intellectual Property Rights, particularly the Occhi Design

Dear Mr. Gottlieb,

I am following up on your letter dated April 18, 2007 and my various phone conversations with Barbara Loewenthal.

At this stage, Pucci has tried to resolve this matter amicably without success.

On April 4, 2007, your client Bond No. 9 was served with a cease and desist letter from Pucci, requiring it to cease and desist from the sale and distribution of infringing Pucci items, and to comply with our various demands.

We understood during our meeting dated April 11th, 2007 that your client was willing to cooperate with us in resolving the violation amicably.

However, at this stage your client is still selling on her website at www.bondno9.com, at department stores domestically and internationally, making obviously profits on these sales.

While your client used the Pucci name and Trademark on media articles, as well as the adjective "Pucciesque", you are basically claiming that your client was not willful in infringing the Pucci Occhi Design.

First of all, you might be aware of the strength of the various Pucci Intellectual Property Rights, particularly on the Occhi Design.

Secondly, there is undeniably a similarity between the Pucci Occhi Design and the Bond No. 9 design.

**LV**

19 EAST 57TH STREET  NEW YORK NY 10022  TEL: 212-931-2000  FAX: 212-931-2932

Moreover, the fact that your client copied our Pucci well known Intellectual Property Rights knowing that these products were not originated from Pucci ("Pucci" as well as the word "Pucciesque") makes it clear that her intention was willful. This unauthorized use of Pucci's rights proves that they were intentionally copied to elevate the status of the infringing items and confuse customers who are interested in possessing genuine products which bear the Pucci Trademarks, copyrights and/or Trade Dress.

We believe that your client could not come with such a design for her products, selecting it without knowing the prior famous rights of Pucci. If not, how would you explain that she presented her perfume bottles to the media press, by using the "Pucci" name and Trademark and or adding the word "Pucciesque", adding more confusion as to the source of the item? (See attached Exhibit A).

Please find below for your convenience example of such declarations:

"...said Laurice Rahme, owner and founder of Bond No. 9. With a "vintage Pucci-esque" bottle featuring swirls of pink, lavender and black on a white background reflecting silk textiles of the late Fifties and Sixties, the packaging is just as daring as the fragrance itself, according to Rahme." (WWD).

"It's not discreet. It is not quiet, says Bond No. 9 founder Laurice Rahme. A blend of rose, patchouli and pink pepper notes, Bryant Park comes packaged in a flashy, hot pink and purple Pucci-inspired bottle. The Pucci spririt is timeless." (W magazine).

"Dig that groovilicious Pucci-esque bottle". (Bond No. 9 Bryant Park, www.sniffapaloozamagazine.com).

"This Pucci and late 50s inspired bottle smells just as pretty as it looks." (Fabsugar.com Bond no 9: Bryant Park Reeks of Fashion).

Your client used the "Pucci" name and Trademark in connection with the sales of those infringing items, showing that this infringement was undeniably willful.

Accordingly, we can ascertain that your client acted in bad faith, and most of all that the infringement was willful.

Furthermore, this unauthorized use of the Occhi design is particularly damaging that it occurs when Pucci launches cosmetic products on the market as you already knew from the documents you sent us. (See attached Exhibit B).

The documentation you provided us is accordingly irrelevant. Not only you sent us some genuine Pucci items (See above Exhibit B), but also some of the pictures and/or items provided are not infringing Pucci's rights. Not to mention that for

other pictures and/or items, we have already taken and/or are in the process of taking some action against such infringers.

As you might be aware, Pucci is enforcing its rights and does not allow infringers to dilute its intellectual property rights.

When Pucci discovered Bond No.9 infringed on its rights, it immediately sent a cease and desist letter.

You stated in your e-mail dated April 17, 2007 that your client "manufactured and shipped 8,000 bottles" bearing the Pucci Occhi Design, as well as being referenced as "Pucci" and or "Pucciesque".

I understand from our phone conversation from today that at this stage, your client advised you the perfume bottles will be removed from her website. Please confirm that such removal took place.

As mentioned to you and as a compromise, Pucci agrees at this stage that your client sell the remaining inventory at her distributors (domestically and abroad) until May 18, 2007. By May 19, 2007, all items should be recalled so that a new design be affixed on the bottles.

We would appreciate to receive supporting documentation on the sales made so far and/or up to May 18th (both directly by Bond No.9, and its distributors), as well as on the profits made. Knowing that your client sells the infringing items for at least $125, the gross sales should amount at least 1,000,000.00. (125 x 8,000 = 1K).

Therefore, given the nature and the extent of the infringement, Pucci insists that Bond No 9 pay damages owing to the harm caused by this infringement and disgorge all profits earned from selling the infringing goods.

While I am still convinced that we should be able to reach an agreement and avoid litigation, if you still think that there was no infringement and that Pucci is not entitled to defendant's profits, please confirm your client's position, and Pucci will take all the necessary steps to protect its rights.

By contrast if you are still in the process to resolve this matter amicably, please revert back to me at your earliest convenience.

We await an immediate response from you.

This letter is written without prejudice to the rights and claims of Pucci, all of which are hereby expressly reserved.

Sincerely yours,

Nathalie Chasques
Anticounterfeiting Manager
For North America
Tel: 212 931 1730

Cc: Nathalie Moulle Berteaux, Emmanuel Barbault

# EXHIBIT A



Vote and you could win tickets to the finale.   ← Vote Now

SP

| My Groups | Fab Finds | Beauty Marks | Look Book | Celebrity Style | Links | Archives | Co |

« Join The Panty-of-the-Month Club                    Super Sexy Lip Plumpers, P

**Hi! You landed here because of your search for 'Bond No 9 Bry: Park Pucci'**

Here are some other stories you might like:

**Angelina Leaves Vietnam to Start Family Bonding**

**Grindhouse Coming to a Theater Near You**

**High Line Music Festival: Designed by David Bowie**

**TV Preview: "Entourage" Season Three, Part Two**

**Come Fab Finding With Me: A "Bottom Heavy" Figure**

## Bond No. 9: Bryant Park Reeks of Fashion

Fri, 02/02/2007 - 4:21am by bellasugar

Consider me your personal shopper! I provide your wish list before the wait list.

Read the rest of my profile or add me to your buddy list.

**Top Talkers**

  JKe895

  Maggie Mae

  kscincotta

  Wicked

 XDeexDeeX

Starting today is Fall 2007 Ready-to-Wear New York Fashion Week! The world famo Bryant Park tents will be premiering clothing, accessories and the newest fashion fo fragrance called, **Bond No. 9 Bryant Park**, $185. This Pucci and late 50s inspired bottle smells just as pretty as it looks.

Created by perfumer Michel Almairac, Bond No. 9's Bryant Park is made of: lily of tl valley, rhubarb, pink pepper, patchouli, rose, raspberry and amber. It is hip, distinc very wearable. I love that it's not too floral and fruity like other fragrances, it's quit tangy and fun.



For those of you who unfamiliar with Bryant Park, let me paint a little pict this small oasis smack in the middle midtown for you.

On 41st Street between Fifth and Si: avenues, lies a tree lined, lush greer amidst high rise buildings, the New

fapalooza Magazine, online perfume magazine, perfume reviews4

The notes of Bryant Park are Lily of the Valley, Rhubarb, Pink Pepper, Rose, Patchouli, Raspberry & Amber. The development is primarily linear but with a "twist". It lasts so long you have to revisit your wrist to notice the changes. Bryant Park has amazing longevity, 14 hours after one application. The fragrance does not have a lot of "le sillage", but instead remains close to the skin. As always, test on you own skin before making a purchase decision. After about 3 tries, I have decided that Bryant Park is indeed full bottle worthy.

If you, unlike most of the folks I hang out with, want just one or two perfumes, Bryant Park would be ar choice for your daytime fragrance. Just as we have one or two items as staples in our wardrobe, Brya the very same role in perfume.

If Bryant Park was a runway model & I was a sports type announcer, here is what I would say: Que th The Girl from Ipanema "And next we have Bryant Park, latest from the House of Bond. She sparkles, bouncy-step (lily of the valley) with a twinkle in her eye (rhubarb). She crinkles her perfectly sculpted 8 nose (the pink pepper) as the most glorious of smiles envelopes her beautiful face (a soft rose).

Reaching the end of the walkway, she stops makes eye contact with some lucky member of the audie gives them an almost unperceivable wink of her long lashes. (The patchouli, which believe me, IS unperceivable) As she turns to retrace her steps, a small breeze lifts the scent of sensual summer be the crowd (raspberries & amber) and everyone says "Aaaahhh".

# Bond No. 9 Bryant Park
## Kathy Patterson (The Minx)

Bryant Park is the latest fragrance from New York-based perfumer Bond No. 9. It was created by perfumer Michel Almairac, and is described as "a rose-patchouli concoction with pink pepper added for dissonance." Although their last new fragrance, West Side also has notes of rose and amber, the two scents are quite different. Notes: rose, patchouli, pink pepper, lily of the valley, rhubarb, raspberry, amber.

The opening is of tart rhubarb and tingly pink pepper with a floral background note. The patchouli, combined with the pepper, gives Bryant Park a sexy earthiness, and the raspberry is dry, not sweet.

After a few minutes, the floral background notes surge forward, causing the overall scent to become more "perfumy," then fade back down again to let the amber peek through. The drydown—the best part and definitely worth waiting for—is a lovely amber floral that still carries the tang of rhubarb and raspberry.

## Dig that groovilicious Pucci-esque bottle!



**DEMETER**
FRAGRANCE LIBRARY

Two reviews
by Kathy Patterson

favorite designer boutiques. Increasingly, the top labels are discovering that the surest way to a customer's wallet is through her stomach. Last November Gucci opened a café in its new Tokyo flagship; in November Hong Kong's Lane Crawford unveiled its "chocolate room"; Dolce & Gabbana has started offering martinis at its new Shanghai shop; and in Tokyo's Ginza district, the newly revamped Hermès flagship boasts an in-shop boite that serves coffee and confections—on Hermès china, *naturellement*. Later this year, Parisian pastry haven Ladurée will open in Tokyo's Mitsukoshi department store and Kuwait's Villa Moda. (American macaroon fans should know that Ladurée will also be opening in New York's renovated Plaza Hotel.) One question remains: Will designers have to offer larger sizes to accommodate their customers' expanding waistlines?



An American Apparel store

### AN AMERICAN SALE

Dov Charney, the perennially outspoken founder of Los Angeles–based American Apparel, has created a worldwide phenomenon with his colorful T-shirts, sexually charged advertising campaigns and rapidly growing chain of boutiques. While the brand's more outré offerings—gold Lurex bodysuit, anyone?—might make conservative Wall Streeters cringe, they're apparently not enough to blind financial types to the label's potential. In mid-December, Charney inked a $383.5 million deal to merge his T-shirt empire with New York–based specialized acquisition company Endeavor Acquisition Corp. "I want to open up more stores in Hong Kong, Glasgow and Dublin, and I can't do it without money," Charney said. Still, he insisted, "it doesn't mean people are going to come into the office wearing suits and ties."



### Sweet Smell of Style

"It's not discreet. It's not quiet," says Bond No. 9 founder Laurice Rahmé of her latest scent, Bryant Park. "It's for people who are not afraid to be daring and audacious." Clearly Rahmé knows a thing or two about the crowd that fills the park's tents twice a year for New York Fashion Week.

A blend of rose, patchouli and pink pepper notes, Bryant Park comes packaged in a flashy, hot pink and purple Pucci-inspired bottle that would look at home on any front-row regular's dressing table. "The Pucci spirit is timeless," Rahmé says when asked why she chose the print. "I could have picked Chanel, but they're a competitor of mine."

The spritz may smell delicious, but there's a strange twist in this fragrance launch: This past fall Bryant Park honchos, complaining that the shows are too disruptive, requested that Fashion Week look for a new home. Rahmé isn't worrying about it: If the relocation does come to pass, she hopes her customers will consider her new scent "a souvenir." —Emily Holt



Top: Bond No. 9's new Bryant Park fragrance. Above: Bond's New York flagship.

...U. THURSDAY, MARCH 29, 2007  17
WWW.COM

# Bond No. 9 Pays Tribute to Bryant Park

**By Michelle Edgar**

Niche fragrance house Bond No. 9 is honoring the long-time host of New York's fashion week with a new scent for women called Bryant Park.

"We wanted to immortalize it and make it a souvenir — a remembrance of fashion week being held there for so many years," said Laurice Rahme, owner and founder of Bond No. 9.

With a "vintage Pucci-esque" bottle featuring swirls of pink, lavender and black on a white background reflecting silk textiles of the late Fifties and Sixties, the packaging is just as daring as the fragrance itself, according to Rahme.

"I didn't want to create a discreet scent but something that was more outgoing and forward that could be worn from day to night," said Rahme. "The juice is just as gutsy as the bottle. It's noisy and loud like fashion week."

Launching in the U.S. this month, Bryant Park is a "rose patchouli" scent. Bond No. 9's last fragrance, West Side, was a "gourmand rose." Rahme decided to create a series of rose fragrances because the "rose trend" had become increasingly popular among younger consumers. Rahme added that she's considering a "spicy fresh rose" scent for the series' next fragrance.

"Rose is a symbol of femininity," said Rahme. "There are so many twists and interpretations you can do on the rose. Since niche perfumery houses started reintroducing the scent, it has attracted a much younger consumer. When we saw how West Side sold out, we realized it was safe to do another rose."

Created by Michel Almairac of Robertet, Bryant Park features top notes of lily of the valley, rhubarb and pink pepper; middle notes of rose and patchouli, and base notes of raspberry and amber. The fragrance will roll out internationally in Bond No. 9's 12 markets

beginning in May.

Bryant Park is Bond No. 9's 28th scent and could make up to $2 million in first-year sales, according to Rahme.

Bryant Park will retail at $185 for a 3.4-oz. bottle and $125 for a 1.7-oz. bottle. The scent will also be available for $45 for 1 oz. in a spray flacon. It will be sold at Bond No. 9's four New York boutiques, in 27 Saks Fifth Avenue doors and in about a dozen boutiques and spas worldwide including the U.K., Hong Kong and Dubai. The fragrance will also be merchandised on Bond No. 9's e-commerce Web site bondno9.com, which launched last summer.

A monthlong preview of the fragrance kicked off during fashion week last month. According to Rahme, Bond No. 9 distributed 10,000 samples of the fragrance during the week's shows and events.

The company also broke a print advertising campaign in The New York Times last month, which will be followed by ads in W magazine in April and May. In addition, Saks Fifth Avenue's catalogue featured a two-page scented insert of Bryant Park, and more than 80,000 samples will be distributed through the retailer's stores beginning this month.

There are also plans to open three more Bond No. 9 boutiques in Manhattan's Harlem, Chelsea and Wall Street neighborhoods by the end of the year. A second Bond No. 9 boutique opened in Dubai, and the company is looking to enter new markets in Spain, Switzerland and Japan, according to Rahme.

Rahme projects the firm will reach $30 million in total revenue — 67 percent of which is expected to be domestic — by yearend. She also expects a 30 percent increase in export business.

Rahme won't be stopping there, though. This fall, the company plans to enter the bath and body category with a launch of body oils, creams and lotions.

## Donatella Goes to London

**LONDON** — London experienced some Milan-style glam Tuesday when Donatella Versace swept into town to promote the fashion house's new signature fragrance.

"I do love London," murmured the diminutive designer as she surveyed the city from the penthouse suite at The Dorchester hotel, where she hosted a cocktail party.

It was a moment of peace before a media storm broke later that night regarding the health of Versace's daughter, Allegra. (See related story, page 2.)

And London sure loved her. Donatella-mania swept Harrods earlier that day when she showed up to sign bottles of the scent.

"I couldn't believe when I heard she was coming," said 20-year-old fashion student Jayne Hemsley. "I'm a big fan of Versace, obviously."

"I'm a big fan of her clothes and she's amazingly beautiful," said 18-year-old Michael Matic, from Copenhagen who was in London on vacation. "It's an honor to meet her."

"I'm overwhelmed by the amount of people who came today," said Versace as curious shoppers strained to snap pictures with mobile phones. "The people who come are always happy to see me. I always ask myself why they like me so much."

— **Brid Costello**

## Rosinoer Named to Clarins Board

**PARIS** — Serge Rosinoer has been named chairman of Groupe Clarins' advisory board. He succeeds Jacques Courtin-Clarins, the French beauty firm's founder, who died on March 22.

Rosinoer has been a member of the company's advisory board since 2000. He has held numerous roles within Clarins' management board, most recently acting as its chairman.

Before joining Clarins in 1978, he was chief executive officer of Max Factor Europe.



BEAUTY BEAT

*The Bryant Park fragrance.*

# <u>EXHIBIT B</u>

Beauty Byte: Pucci and Guerlain Create Cosmetics | FabSugar



SUN WORTHY SKECHERS FOR SPRING
Buy 2 pairs or more and get 15% off!
SKECHERS
www.skechers.com

| My Groups | Fab Finds | Beauty Marks | Look Book | Celebrity Style | Links | Archives | Contact |

« London Fashion Week, Fall 2007: Christopher Kane    Look of The Day: Oh No I Didn't! »

> **Hi! You landed here because of your search for 'emilio pucci inspired perfume'**
>
> Here are some other stories you might like:
>
> Beauty Byte: Gwen Stefani Creates A Perfume
>
> Beauty Byte: Scentest Robotic Frangrance Spritzers
>
> Gwen to Wind it Up on American Idol Tonight!
>
> Calvin Klein's Latest Fragrance: ck IN2U
>
> French Fries & Ketchup Artist

Consider me your personal shopper! I provide your wish list before the wait list.

Read the rest of my profile or add me to your buddy list.

**Top Talkers**

 JKe895

 Maggie Mae

 kscincotta

 XDeexDeeX

## Beauty Byte: Pucci and Guerlain Create Cosmetics

Wed, 02/14/2007 - 4:41pm by bellasugar

This May, Emilio Pucci is branching out to create a a five unit, limited edition color cosmetics collection created by their sister company Guerlain (who is also owned by LVMH Moët Hennessy). The collection will be available until August in the hopes of increasing both brands' visibility and traditional customer base.



Both companies are ecstatic about the partnership. Laudomia Pucci, image director and daughter of the company founder, Emilio Pucci said:

"In every woman's mind, I think, Guerlain represents a dream brand. It's funny we never did cosmetics before, but I guess we've had other



**Who's Online**

















save train



more »



things to do."

The packaging of the makeup was inspired by the famous Pucci print and will appear inside the outer box and on some fabric cases containing the makeup.

To read about the details of Pucci's new cosmetics line,

The line includes **The Eye Set** which will sell for $75. In it you get a **kohl eyeliner**, **mascara** and a four-color **eye shadow palette**. Also available are four different **lip gloss** colors, $29, a **blush mousse**, $39, Meteorites **pressed-powder beads** that come in the Pucci scarf colors, $54.60 and a **brush** needed to apply the powder which sells for $35 separately.

**Related Fab Stories**

Beauty Byte: Scentest Robotic Frangrance Spritzers

Beauty Byte: Gwen Stefani Creates A Perfume

Absolutely Fabulous

Absolutely Fabulous

Spring Lip Glosses, Part II: Beautiful Berries

**Related Stories Across the Network**

Chic Makeup Case: Bluefly - Emilio Pucci magenta signature print double-handle small cosmetic case

Juicy Couture Beauty Cosmetics Bags, Rose

Emilio Pucci Piume shift dress

Swap -MakeupAlley I Street Smart Beauty!

Bluefly - Product Details - #2033208 - Emilio Pucci orange printed grosgrain tote

email to a friend

printer friendly version

1,761 clicks

Tags: beauty byte    Guerlain

Makeup    Pucci

# EXHIBIT 6

GOTTLIEB, RACKMAN & REISMAN, P.C.

COUNSELORS AT LAW

PATENTS · TRADEMARKS · COPYRIGHTS · INTELLECTUAL PROPERTY

270 MADISON AVENUE
NEW YORK, N.Y. 10016-0601
PHONE: (212) 684-3900 · FACSIMILE: (212) 684-3999
WEB: http://www.grr.com · E-MAIL: info@grr.com

JAMES RE^MAN
MICHAEL I. RACKMAN
GEORGE GOTTLIEB
BARRY A. COOPER
DAVID S. KASHMAN
ALLEN I. RUBENSTEIN
JEFFREY M. KADEN
AMY B. GOLDSMITH
TIBERIU WEISZ
MARIA A. SAVIO
RICHARD S. SCHURIN

OF COUNSEL
DIANA MULLER*

* MEMBER OF THE BAR
OF ARGENTINA ONLY

DONNA MIRMAN BROOME
BARBARA H. LOEWENTHAL
MARC P. MISTHAL
FRANK D. DECOLVENAERE
STEVEN STERN
YUVAL H. MARCUS

PATENT AGENT
ZOYA V. CHERNINA

April 16, 2007

<u>VIA FACSIMILE</u> (516) 481-5107    # 516 481 2302

Fred Levy
Hamilton Levy Miller & Co.
644 Woodfield Road
P.O. Box 9063
West Hempstead, NY 11552-9063

RE:    General Liability Insurance Policy and Umbrella Policy
for Laurice El Badry Rahme Ltd. dba Laurice & Co., and
Claim Made by Emilio Pucci SRL and Emilio Pucci, B.V.,
Part of LVMH Fashion Group
<u>Our Ref. No. 4543/118</u>

Dear Mr. Levy:

As you are aware, we represent the Intellectual Property interests of Laurice El Badry Rahme Ltd., dba Laurice & Co. ("Laurice & Co."). Attached is a letter, with enclosures, from Emilio Pucci SRL and Emilio Pucci, B.V., part of the LVMH Fashion Group ("Pucci") which we request that you immediately tender to the appropriate insurance company in connection with the policy of the above-insured. Please also submit this claim under any and every other insurance policy of Laurice & Co. that may provide coverage.

Please note the Pucci demands in its attorney's letter that Laurice & Co. discontinue any promotion or advertising of the allegedly infringing products and threatens legal action if such advertising and promotion is not ceased. Such claims are clearly covered under the "Advertising Injury" endorsement of the insured's policy, which provide coverage for "advertising injury... caused by an offense of infringing, in that particular part of your advertisement about your goods, products or services upon their copyrighted advertisement; or registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title".

Upon completion, we ask that you confirm to us that you have tendered this claim to the appropriate insurance agents, and that the insured's notice obligations under the policy have been fulfilled.

Fred Levy
Hamilton Levy Miller & Co.
April 16, 2007
Page 2


Should you have any questions, please do not hesitate to call the undersigned.

Very truly yours,

GOTTLIEB, RACKMAN & REISMAN, P.C.

Barbara H. Loewenthal

BHL:mr

Enclosure

cc: Laurice Rahme
    George Gottlieb, Esq.

S:\barbara\clients\Laurice & Co\insurance.ltr.wpd

# EXHIBIT 7

# CHUBB GROUP OF INSURANCE COMPANIES

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

May 9, 2007

Laurice & Co
9 Bond Street
New York, NY 10012
Attn:   Laurice Rahme

Re:     Insured:        Laurice El Badry Rahme Ltd. DBA Laurice & Co
        Policy:         35825629
        Company:        Federal Insurance
        Policy:         79837973
        Company:        Federal Insurance
        Date of Loss:  4/4/07

Dear Laurice Rahme:

The Federal Insurance Company acknowledges receipt on April 17, 2007 of a letter dated April 4, 2007 from LVMH Fashion Group representing Emilio Pucci SRL and Emilio Pucci, B.V. sent to you demanding that you cease and desist any use of the "Occhi" print, surrender all samples of the perfume, provide names and addresses of all persons to whom the perfume has been distributed or sold, provide copies of all correspondence received concerning the perfume and total dollar amounts you have earned as a result of the perfumes sales  The claimant also alleges that you referenced, in various fashion and magazine press articles describing the perfume bottle as having a "Pucci" style and as being "Pucciesque". We also acknowledge an email dated 4/30/07 from the claimant and received by us on 5/9/07.

After reviewing the claim in conjunction with the policy language, it is the position of the Federal Insurance Companies that no coverage exists for this matter under the liability portion of your Commercial General Liability policy or your Chubb Commercial Excess and Umbrella policy.  The basis for this decision will be discussed more fully below.

We now refer you to the Federal Insurance Company Customarq Liability policy, 35825629, issued to Laurice El Badry Rahme LTD DBA Laurice & Co for the policy period June 5, 2006-June 5, 2007, with limits of $1,000,000 per occurrence and a $2,000,000 general aggregate.

Excerpts of certain provisions contained in the above referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely the excerpts set forth in the Appendix.

**Coverages**

Bodily Injury And Property Damage Liability Coverage

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

Advertising Injury And Personal Injury Liability Coverage

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

We refer your attention to the definitions section of the policy which defines Bodily Injury, Property Damage, Advertising Injury, Advertisement, Personal Injury, Intellectual Property Law Or Right and Occurrence. Please review these definitions which you will find in the Appendix accompanying this letter.

Please also refer to the Advertising Injury/Personal Injury Exclusions section of the policy, specifically the, Continuing Offenses and Expected or Intended Injury exclusions. Please also refer to the Policy Exclusions section of the policy, specifically Intellectual Property Laws Or Rights. These exclusions are set forth in the Appendix accompanying this letter.

In view of the foregoing, the Federal Insurance Company must disclaim coverage under your Commercial General Liability policy as the allegations set forth in the letter do not fall within the insuring agreement as they do not meet the definitions of Bodily Injury or Property Damage caused by an Occurrence, or Personal Injury as those terms are defined in the policy. While the discussions between Mr. Gottlieb and Mr. Levy have centered around the references in the emails/letters to "Pucci style" and although Emilio Pucci is a registered trademark, the insured did not misappropriate the mark in their advertising. Further, even if we were to argue that it was infringement of a registered trademark, coverage would still be disclaimed based on the Intellectual Property Law or Rights exclusion as the "Occhi" pattern used on the bottle is copyright infringement. The infringement of the "Occhi" pattern would constitute infringement of copyright which is not a covered offense under the definition of Advertising Injury.

We now refer you to your Chubb Commercial Excess and Umbrella policy number 79837973, form 0815 (Ed. 7/01) issued by the Federal Insurance Company to Laurice El Badry Rahme LTD DBA Laurice & Co. affording a $2,000,000 limit of liability per policy period from June 5, 2006 – June 5, 2007.

The Federal Insurance Company hereby disclaims coverage entirely under both Coverage A and Coverage B of the Commercial Umbrella Policy. The basis for this decision will be discussed more fully below.

Excerpts of certain provisions contained in the above-referenced policy are set forth in the Appendix accompanying this letter. This information is provided so that you may have it available as you review the explanations provided in this letter. Please note that the positions set forth in this letter are based on all of the provisions of the above referenced policy, and not only on the excerpts set forth in the Appendix. Therefore, we urge you to refer to the full text of the policy, and not merely the excerpts set forth in the Appendix.

Specifically, please refer to the Insuring Agreement, which reads in part as follows:

## INSURING AGREEMENTS

### Coverage/Excess Follow-Form Coverage A

Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured**, that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits.**

This coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance.

This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule of Underlying Insurance, unless a term or condition contained in this coverage:

- Differs from any term or condition contained in the applicable **underlying insurance**; or
- Is not contained in the applicable **underlying insurance**.

With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent that such terms and conditions provide less coverage than the terms and conditions of the applicable **underlying insurance**.

This coverage does not apply to any part of loss within **underlying limits**, or any related costs or expenses.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

We now refer your attention to the definitions section of the policy which defines Underlying Insurance. Please review this definition which you will find in the Appendix accompanying this letter.

We refer your attention to the "Exclusions" section of your Excess Umbrella policy, specifically the "Underlying Insurance" exclusion, which is set forth in the Appendix accompanying this letter.

Coverage A in large part, follows the forms and endorsements of the Commercial General Liability policy referenced above. In as much as there is no coverage under the Commercial General Liability policy, there is no coverage under Coverage A of the Chubb Commercial Excess and Umbrella policy. In addition, there is no coverage by virtue of the aforementioned exclusionary language.

We now refer you to Coverage B of our Commercial Umbrella policy. Specifically, the Insuring Agreement, which states in part as follows:

### Coverages/Umbrella Coverage B

Bodily Injury And Property Damage Liability Coverage

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay on behalf of the **insured**, **loss** by reason of liability:

- Imposed by law; or
- Assumed in an **insured contract;** for **bodily injury** or **property damage** caused by an occurrence to which this coverage applies.

This coverage applies only to such bodily injury or property damage that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

This coverage does not apply to ay part of:

A.  **loss** to which **underlying insurance** would apply, regardless of whether or not:

   1.  **underlying insurance** is available; and

   2.  the applicable **underlying limits** have been exhausted;

B.  **loss** to which **underlying limits** apply; or

C.  any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pass sums or perform acts or services under this coverage.

Advertising Injury And Personal Injury Liability Coverage

Subject to all of the terms ad conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured**, **loss** because of liability:

- Imposed by law; or
- Assumed in an **insured contract**;

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

This coverage does not apply to any part of:

A.    **loss** to which **underlying insurance** would apply, regardless of whether or not:

    1.    **underlying insurance** is available; and

    2.    the applicable **underlying limits** have been exhausted;

B.    **loss** to which **underlying limits** apply; or

C.    any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

We refer your attention to the definitions section of your policy which defines Bodily Injury, Personal Injury, Property Damage, Advertising Injury, Advertisement, Intellectual Property Law Or Right and Occurrence. Please review these definitions which you will find in the Appendix accompanying this letter.

We also refer your attention to the Exclusions, Umbrella Coverage B Advertising Injury/ Personal Injury section of the policy, specifically the, Continuing Offenses, Expected or Intended Injury and Intellectual Property Exclusion exclusions which are set forth in the Appendix accompanying this letter.

In view of the foregoing, the Federal Insurance Company must disclaim coverage under Coverage B of the Chubb Commercial Excess and Umbrella policy as the allegations set forth in the letter do not fall within the insuring agreement as they do not meet the definitions of Bodily Injury or Property Damage as caused by an Occurrence, or Personal Injury. While the discussions between Mr. Gottlieb and Mr. Levy have centered around the references in the emails/letters to "Pucci style" and although Emilio Pucci is a registered trademark, the insured did not misappropriate the mark in their advertising. Further, even if we were to argue that it was infringement of a registered trademark, coverage would still be disclaimed based on the Intellectual Property Law or Rights exclusion as the "Occhi" pattern used on the bottle is copyright infringement. The infringement of the "Occhi" pattern would constitute infringement of copyright which is not a covered offense under the definition of Advertising Injury.

In view of the foregoing, the Federal Insurance Companies will neither defend nor indemnify Laurice El Badry Rahme LTD DBA Laurice & Co, and any judgment obtained by the plaintiff predicated upon allegations that fall outside the insuring agreement, or within the exclusionary language identified above, shall be the responsibility of Laurice El Badry Rahme LTD DBA Laurice & Co. and not that of the Federal Insurance Company.

The Federal Insurance Company reserves the right under the policies and the applicable law to cite additional applicable policy provisions as may be appropriate. The foregoing disclaimer is premised upon the allegations set forth in the complaint and the terms and conditions of the policies. By limiting policy references to those cited, the Federal Insurance Company does not waive any other policy provisions. The insurance policies in their entirety are incorporated by reference as if they had been stated in full.

Should there be any information that you believe we have overlooked in the course of our review, we trust that you will call it to our attention so that we can reevaluate our position accordingly. If future changes occur in this case that you believe have a bearing on the applicability of our coverage, we invite you to call those to our attention.

Sincerely,


Sharlene Guthman
Casualty Claims
(516) 745-8225

cc:     Hamilton Levy Miller & Co
        644 Woodfield Road
        West Hempstead, NY 11552-9063
        Attn: Mr. Fred Levy


        Gottlieb, Rackman & Reisman PC
        270 Madison Ave
        New York, NY 10016
        Attn: Mr. Gottlieb

**APPENDIX**
Federal Insurance Company
35825629
June 5, 2006-June 5, 2007

**Definitions**

**WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:**

Advertisement

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

Advertising Injury

**Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

- copyrighted **advertisement**; or
- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

Bodily Injury

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

Intellectual Property Law Or Right

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);
- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;
- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or
- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

Occurrence

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Personal Injury

**Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

A.    false arrest, false detention or other false imprisonment;
B.    malicious prosecution;
C.    wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;
D.    electronic, oral, written or other publication of material that:

      1.    libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or
      2.    violates a person's right of privacy; or

E.    discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

Property Damage

**Property damage** means:

- physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
- loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

## Advertising Injury/Personal Injury Exclusions

Continuing Offenses

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.   this insurance; or
B.   a subsequent, continuous renewal or replacement of this insurance, that:
  1.   is issued to you by us or by an affiliate of ours;
  2.   remains in force while the offense continues; and
  3.   would otherwise apply to **advertising injury** and **personal injury**.

Expected Or Intended Injury

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or on behalf of the insured, that:

- is intended by such insured; or
- would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;

to cause injury.

## Policy Exclusions

Intellectual Property Laws Or Rights

This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

- assertion; or
- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- is caused by an offense described in the definition of **advertising injury**; and
- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury.**

## APPENDIX

Federal Insurance Company
79837973
June 5, 2006-June 5, 2007

## DEFINITIONS

When used with respect to insurance under this contract, words and phrases that appear in bold print have the special meanings described below.

## ADVERTISEMENT

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanaguage.

## ADVERTISING INJURY

**Advertising Injury** means injury, other than **bodily injury, property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in particular part of your **advertisement** about your goods, products or services, upon their:

- Copyrighted **advertisement**; or
- Registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

## BODILY INJURY

**Bodily injury** means physical:

- Injury;
- Sickness; or
- Disease;

Sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

## INTELLECTUAL PROPERTY LAW OR RIGHT

Intellectual Property Law or Right means any:

- certification mark, copyright, patent or trademark(including collective or service marks);
- right to, or judicial statutory law recognizing a interest in, any trade secret or confidential or proprietary non-personal information;
- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or
- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

## OCCURRENCE

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

## PERSONAL INJURY

**Personal injury** means injury, other than **bodily injury, property damage** or **advertising injury**, caused by an offense of:

    A.    false arrest, false detention or other false imprisonment;

    B.    malicious prosecution;

    C.    wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;

    D.    electronic, oral, written or other publication of material that:
        1.    libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or
        2.    violates a person's right of privacy;

    E.    discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

## PROPERTY DAMAGE

**Property damage** means

1.   physical injury to tangible property, including
     resulting loss of use of that property. All such loss
     of use shall be deemed to occur at the time of the
     physical injury that caused it; or

2.   loss of use of tangible property that is not physically injured. All
     such loss shall be deemed to occur at the time of the **occurrence**
     that caused it.

Tangible property does not include any software, data or other information
that is in electronic form.

**Policy Definitions**

## UNDERLYING INSURANCE

**Underlying Insurance** means the coverages for the hazards described in
the Schedule Of Underlying Insurance and the next renewal or
replacement insurance thereof.

**Exclusions/Excess Follow-Form Coverage A**

Underlying Insurance Exclusions

Notwithstanding anything to the contrary set forth in any other provision
of this contract, this insurance does not apply to any liability or loss, cost
or expense to which the terms and conditions of **underlying insurance** do
not apply.

**Exclusions/Umbrella Coverage B**
**Advertising Injury/Personal Injury**

Continuing Offenses

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

    A.    this insurance; or

    B.    a subsequent, continuous renewal or replacement o this insurance, that:

        1.   is issued to you by us or by an affiliate of ours;

        2.   remains in force while the offense continues; and

        3.   would otherwise apply to **advertising injury** and **personal injury**.

Expected Or Intended Injury

This insurance does not apply to advertising injury or personal injury arising out of an offense, committed by or behalf of the **insured**, that:

- is intended by such insured.; or
- would be expected from the standpoint of a reasonable person in the circumstances of such **insured;**

to cause injury.

**Exclusions/Umbrella Coverage B**
**Bodily Injury/Property Damage/**
**Advertising Injury/**
**Personal Injury**

Intellectual Property
Laws Or Rights

This insurance does not apply to any actual or alleged liability or loss, cost or expense arising out of giving rise to or in any way related to any actual or alleged:

- assertion; or
- infringement or violation

by any person or organization (including ay **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- is caused by an offense described in the definition of **advertising injury**; and

- does not arise out of, give rise to or in any way related to any actual or alleged assertion, infringement or violation of any **intellectual property law or right,** other than one described in the definition of **advertising injury**.

**EXHIBIT 8**

# GOTTLIEB, RACKMAN & REISMAN, P.C.
### COUNSELORS AT LAW
PATENTS · TRADEMARKS · COPYRIGHTS · INTELLECTUAL PROPERTY

JAMES REISMAN
MICHAEL I. RACKMAN
GEORGE GOTTLIEB
BARRY A. COOPER
DAVID S. KASHMAN
ALLEN I. RUBENSTEIN
JEFFREY M. KADEN
AMY B. GOLDSMITH
TIBERIU WEISZ
MARIA A. SAVIO
RICHARD S. SCHURIN

OF COUNSEL
DIANA MULLER*

* MEMBER OF THE BAR
OF ARGENTINA ONLY

DONNA MIRMAN BROOME
BARBARA H. LOEWENTHAL
MARC P. MISTHAL
FRANK D. DECOLVENAERE
STEVEN STERN
YUVAL H. MARCUS

PATENT AGENT
ZOYA V. CHERNINA

270 MADISON AVENUE
NEW YORK, N.Y. 10016-0601
PHONE: (212) 684-3900 · FACSIMILE: (212) 684-3999
WEB: http://www.grr.com · E-MAIL: info@grr.com



May 15, 2007

FAX AND CERTIFIED MAIL

Ms. Sharlene Guthman
Casualty Claims
CHUBB GROUP OF INSURANCE COMPANIES
333 Earle Ovington Boulevard, Suite 800
Uniondale, New York 11553-3844

RE: General Liability Insurance Policy and Umbrella Policy
for Laurice El Badry Rahme Ltd. dba Laurice & Co.,
Policy Nos. 35825629 and 79837973
Claim Made by Emilio Pucci SRL and Emilio Pucci, B.V.,
Part of LVMH Fashion Group
Our Ref. No. 4543/118

Dear Ms. Guthman:

As you are aware, we represent the Intellectual Property interests of Laurice El Badry Rahme Ltd., dba Laurice & Co. ("Laurice & Co.").

We understand that you are in receipt of claim letters dated April 4, and April 30, 2007 from Emilio Pucci SRL and Emilio Pucci, B.V., part of the LVMH Fashion Group ("Pucci"), which were forwarded to you starting on April 17, 2007 by Fred Levy of Hamilton Levy Miller & Co. The letters set forth various allegations of trademark infringement in the course of advertising conducted by Laurice & Co. On the basis of the foregoing and in connection with the above-identified policies it was requested that you tender coverage under the "Advertising Injury" portion of the policies.

On May 9, 2007, we received a letter from you denying the requested coverage under both applicable policies.

In view of the foregoing denial, our client has been forced to accept a settlement and now must pay Pucci $75,000.00 and otherwise take certain acts negative to its business. Laurice & Co. has been put in this untenable position of accepting an otherwise unacceptable settlement solely because of Chubb's refusal to tender coverage and accordingly, we look forward to Chubb's reimbursement of all settlement payments, attorneys fees, mandated redesign of products and product recall.

Ms. Sharlene Guttman
May 15, 2007
Page 2

We request reevaluation of the denial based on information previously forwarded to you showing that an "advertising injury occurred."

## INSURANCE POLICY/ ADVERTISING INJURY

You denied coverage claiming that "under your Commercial General Liability policy the allegations set forth in the letter do not fall within the insuring agreement as they do not meet the definitions of Bodily Injury or Property Damage caused by an Occurrence, or Personal Injury as those terms are defined."

As relevant here, the subject insurance policies also cover "Advertising Injury", which requires the insurer to cover damages arising from "advertising injury" defined as follows:

"**Advertising Injury** means injury, other than **bodily injury, property damage or personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your advertisement about your goods, products or services, upon their:

- copyrighted advertisement; or
- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title."

The policies define an "advertisement" as "an electronic, oral, written or other notice about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services."

(See Appendix to your letter of May 9, 2007, containing the definitions of Advertising Injury).

As set forth below, the statements made by Pucci clearly complain of the use by Laurice & Co. of the Pucci trademark in connection with advertising for products, done by Laurice & Co. The claims asserted by Pucci unequivocally assert an infringing use of a registered trademark "Pucci" contained in trade stories in Women's Wear Daily, and W Magazine, stories whose purposes were to advertise and promote Laurice & Co.'s line at issue herein, and quoting Ms. Rahme.

Accordingly, the claims made by Pucci in its aforementioned letters trigger this clause and consequently, full coverage should be granted.

## ASSERTED CLAIMS

Your letter states that "[w]hile the discussions between Mr. Gottlieb and Mr. Levy have centered around the references in the e-mails/letters to 'Pucci style' and although Emilio Pucci is a registered trademark, the insured did not misappropriate the mark in their advertising."

Ms. Sharlene Guttman
May 15, 2007
Page 3

We disagree and in our opinion, you have misinterpreted the applicable policies.

The claims made by Pucci in its letters of April 4, 2007 and April 30, 2007 unequivocally trigger the coverage of the policies based on "advertising injury." As set forth below Laurice & Co. has "advertised" its products within the context of the definition set forth above, and such advertising resulted in a purported trademark infringement of a registered trademarked name, namely the trademark Pucci, which is the subject of the following Federal Trademark Registrations:

| Trademark | Reg. No. | Reg. Date | Class |
|-----------|----------|-----------|-------|
| PUCCI | 2760935 | September 9, 2003 | 020 |
| EMILIO PUCCI | 3029721 | December 13, 2005 | 025 |
| EMILIO PUCCI | 1675914 | February 18, 1992 | 025 |
| EMILIO PUCCI | 1689743 | June 2, 1992 | 018 |
| EMILIO PUCCI | 0838931 | November 14 1967 | 003 |

Copies of the particulars of the above-identified trademarks are available from the United States Patent and Trademark Office database.

**A. Claims Made by Pucci Related to Advertising of Products by Laurice & Co.**

We point to the following claims by Pucci, which complain specifically about trademark infringement of the registered trademark "Pucci" resulting from advertising conducted by Laurice & Co. relating to its perfume products:

Paragraph 7 of Pucci's letter of April 4, 2007 claims that an infringement is "apparent and further results from various press articles in renown Fashion magazines such as WWD... or W ... that this copying, which is qualified of 'vintage Pucci-esque' and is intended to trade upon the fame and notoriety of Pucci, as illustrated by your own reference to 'PUCCI' style [which you said] is timeless".

By virtue of this written statement, Pucci claims that Laurice & Co. infringed upon its "Pucci" trademark based on both oral statements made by Laurice & Co. to the press and also in connection with the advertising that resulted in WWD and W.

Paragraphs 10-13 of Pucci's letter of April 30, 2007, further object to Laurice & Co.'s references to the use of the name and trademark PUCCI as follows:

"We believe that your client could not come up with such a design
for her products, selecting it without knowing the prior famous rights of
Pucci. If not, how would you explain that she presented her perfume bottles to

Ms. Sharlene Guttman
May 15, 2007
Page 4

the media press, by using the 'PUCCI' name and Trademark and or adding the word 'Pucciesque', enhancing more confusion as to the source of the item?"

Thus, Pucci raises further complaints about the oral communications made by Laurice & Co., and the written statements that followed these oral statements concerning the use of the Pucci trademark in connection with goods, which, according to Pucci enhanced the confusion with respect to the source of the goods (e.g., alleged trademark infringement).

Paragraph 6 of Pucci in letter of April 30, 2007, states that "[w]hile your client used the Pucci name and Trademark on media articles, as well as the adjective 'Pucciesque', you are basically claiming that your client was not willful in infringing the Pucci Occhi Design."

This specific claim by Pucci concerns Laurice & Co.'s general "advertising" in the media using the Pucci name and trademark, relating to Laurice & Co.'s products, which, according to Pucci, furthers the alleged confusion with respect to source of origin of Laurice's goods and the goods of Pucci. This shows advertising injury in connection with a claim of trademark infringement as set forth in the definition of advertising injury.

Paragraph 3 of page 3, of Pucci's letter of April 30, 2007 claims that "[y]our client used the 'Pucci' name and Trademark in connection with the sales of those infringing items showing that this infringement was undeniably willful."

Here Pucci again objects to the use by Laurice & Co.'s use of the Pucci trademark in connection with advertising (e.g., use purportedly for the promotion of sales, namely, advertising), which, according to Pucci, caused trademark infringement.

Based on the above, it is apparent that Pucci has asserted claims squarely based upon infringements of its registered trademark in connection with the advertising of products produced by Laurice & Co. As demonstrated above, Pucci complained specifically about advertisements in which Laurice & Co. referenced and thereby infringed upon the Pucci registered trademark in both written publications and/or in oral communications relating to Laurice & Co.'s products. In view of the above the "advertising injury" portion of the policies should take effect.

## B. Policy Exclusions Do Not Apply

Your letter further states that even if an infringement of a registered trademark occurred, "coverage would still be disclaimed based on the Intellectual Property Law or Rights exclusion as the 'Occhi' pattern used on the bottle is copyright infringement. The infringement of the 'Occhi' pattern would constitute infringement of copyright which is not a covered offense under the definition of Advertising Injury".

The claim made by the insured, Laurice & Co. is based on advertising injury in connection with a registered trademark, which is a limitation within the exclusion policy and which controls here.

Ms. Sharlene Guttman
May 15, 2007
Page 5

The Intellectual Property exclusion in the above-identified policies state:

"This insurance does not apply to any actual or allege **bodily injury, property damage, advertising injury or personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

- assertion; or
- infringement or violation;

by any person or organization (including any **insured**) or any **intellectual property law or right,** regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation."

This exclusion applies, unless such injury:

- "is caused by an offense described in the definition of **advertising injury**; and
- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of **any intellectual property law or right** other than one described in the definition of advertising injury."

The above quotation makes it abundantly clear that even if a claim of copyright infringement is made, the Intellectual Property Law exclusion does <u>not</u> apply if the injury is the "one described in the definition of advertising injury." This is the meaning of the definition: <u>this exclusion applies, unless such injury [is] "other than one described in the definition of advertising injury."</u>

In summary on this point, advertising injury is "carved out" of the intellectual property exclusion.

The other exclusions in the policies do not apply here. The Continuing Offenses Exclusion[1] is not relevant because all the complained of events occurred in March-April, 2007,

---

[1] The Continuing Offenses exclusion states: [t]his insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.  This insurance; or
B.  A subsequent, continuous renewal or replacement of this insurance, that:
    1.  is issued to you by us or by an affiliate of ours;
    2.  remains in force while the offense continues; and
    3.  would otherwise apply to **advertising injury** and **personal injury**.

Ms. Sharlene Guttman
May 15, 2007
Page 6

during the term of the policy coverage. Additionally, the Expected or Intended Injury[2] is not controlling because the primary purpose of the advertisements were to promote the goods of the insured, not to infringe upon the Pucci trademark.

Accordingly, none of the exclusions apply.

### C.    The Insured's Position Is Supported by National Underwriter

A recent commentary by National Underwriter, in its FC & S website, concerning Personal and Advertising Injury Liability found at <http://cms.nationalunderwriter.com>, a copy of which is attached for your reference, indicates the foregoing interpretation by us in behalf of the insured, is correct. The article summarizes circumstances recognized in the insurance industry whereby the "exclusion" to the Advertising Injury provisions does <u>not</u> apply.

Quoting from the article, the exclusion is not applicable as follows:

"(i)  Infringement of Copyright, Patent, Trademark or Trade Secret

'Personal and **advertising injury**' arising out of the **infringement** of copyright, patent, trademark, trade secret or other intellectual property rights.

<u>However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.</u>"

Here, the claim by the insured, Laurice & Co., is based on an Advertising Injury which is <u>specifically excluded</u>, that is, cut out of the exclusions.

### CASE LAW

In view of the allegations presented above, it is abundantly clear that Chubb is obligated to provide coverage for Laurice & Co.'s advertising activities in connection with its products. Numerous court decisions in New York and elsewhere unequivocally hold that claims, such as those enumerated above, combined with identical or closely identical insurance policy language, trigger the obligation of the insurance company to grant coverage.

---

[2]  The Expected Or Intended Injury states: [t]his insurance does not apply to advertising injury arising out of an offense, committed by or behalf of the insured, that:

- is intended by such insured; or
- would be expected from the standpoint of a reasonable person in the circumstances of such insured;

to cause injury.

Ms. Sharlene Guttman
May 15, 2007
Page 7

In *Hugo Boss Fashions, Inc. v. Federal Insurance Company*, 1999 U.S. Dist. Lexis 17016 (S.D.N.Y 1999), Hugo Boss fashions and Go Boss USA ("collectively 'Hugo Boss'") filed an action seeking a declaration from the Court that Federal Insurance Company ("Federal") had a duty to defend and indemnify Hugo Boss for damages resulting from a suit that alleged causes of action for, inter alia, trademark infringement, unfair competition, trademark dilution and violation of the New York General Business Law.

During the relevant period, Hugo Boss was covered by an insurance policy issued by Federal Insurance which agreed to "pay damages the insured becomes legally obligated to pay" for any "advertising injury" caused by the insured.  Like the language in Laurice & Co.'s policy, Hugo Boss' policy defined advertising injury as injury "arising solely out of one or more of the following offenses committed in the course of advertising your goods... infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans."  (Hugo Boss Fashions, Inc., 1999 U.S. Dist. Lexis 17016 at 3).

In holding that Federal Insurance had a duty to defend, the Court found that the use of a trademark in connection with goods implies or constitutes advertising in the ordinary meaning of the term.  Accordingly, the Court ruled that Federal had a duty to defend on the asserted causes of action.

The Court also held that the insurer is obligated to defend the entire action, if, among other things, "any of the claims against the insured arguable arise from covered events." Upon reconsideration, the Court adhered to its original decision.  See also *Poof Toy Products v. U.S. Fidelity and Guarantee Co.* 36 USPQ2d 1343, 1346 (ED. Mich, 1995) where the court stated that "once one claim is found to be "arguably" within the policy's coverage, the insurer has a duty to defend even if all the other claims are not subject to coverage".

In *Century 21, Inc. d/b/a Century Dept. Stores LLC. v. Diamond State Insurance*, 442 F.3rd 79 (2nd Cir. 2006) the court held that the defendant "Diamond Insurance Company" ("Diamond") had a duty to defend in a trademark infringement action brought by Gucci America against Century 21, Inc. ("Century") in connection with the "advertising injury[3]" arising as a result of marketing of the alleged infringing product.

In its holding, the Court found that central to the coverage was the allegation brought by Gucci that Century had "marketed, distributed and sold goods in connection with a colorable imitation and simulation of the Gucci Trademarks with the express intent of causing confusion and mistake of deceiving and misleading the purchasing public to buy and otherwise trade in its products in the erroneous belief that they were relying upon the reputation of plaintiff Gucci." Id. at 81. The Court stated:

---

[3]  Advertising was defined as (a) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; (b) oral or written publication of material that violates a person's right of privacy; (c) misappropriation of advertising ideas or style of doing business; or (d) infringement of copyright, title or slogan.

Ms. Sharlene Guttman
May 15, 2007
Page 8

"[A] term as broad and multi-faceted as 'marketing' may be construed to include activities apart from selling and distribution that are 'within the embrace' of advertising as that term is used in the policy to describe Century's coverage.  Diamond's observation that 'marketing' is a broad label encompassing a wide variety of activities relating to the sale of a product, including many that do not accord with the common use of advertising recognizes implicitly, as we do explicitly, that the term also must be understood to refer to activities that accord with the common use of 'advertising'. Although 'marketing' may refer simply to selling, effective selling often involves extensive promotional activities, and when they occur they are all part of the 'marketing.'.... the relevant question is not whether 'marketing' may refer to something other than 'advertising'; rather it is whether Gucci's use of the term suggest any possible factual or legal basis upon which Diamond could be obligated to indemnify Century under any provision of the policy."

In the Century 21 case there was no "overt" advertising of the goods done by Gucci. The advertising was limited to "marketing and distribution" of the goods. <u>Nonetheless the court construed the activities as "advertising injury" and the insurance company was obligated to cover and insure the defendant</u>.

Here, as shown in detail above, Laurice & Co.'s policy which also covers "advertising injury" would  be triggered by Pucci's written objections to Laurice & Co.'s direct references, orally and then in media and publications (e.g., advertising) to "Pucci" as well as its allegations of infringement by virtue of "importation, manufacture (domestic and foreign) offer for sale, sale, distribution, <u>advertising</u>, <u>promotion</u> and display of the Bryant Park perfume."

We request that you promptly confirm coverage.

Should you have any questions, please do not hesitate to call the undersigned.

Very truly yours,

GOTTLIEB, RACKMAN & REISMAN, P.C.

George Gottlieb

Enclosure

cc: Laurice Rahme
    Frederic Cohen
    Fred Levy.

S:\barbara\clients\Laurice & Co\insurance.ltr3.wpd

# CGL Coverage Form—Coverage B

*January, 2005*

## Personal and Advertising Injury Liability

**Summary:** Coverage B of the commercial general liability (CGL) coverage forms is personal and **advertising injury liability** insurance. The provisions for coverage B are similar in both the occurrence version and the claims-made version of the CGL form; the difference lies in the claims-made CGL form where the retroactive date and the extended reporting period are discussed. This article deals with the insuring agreement and the exclusions that make up coverage B.

**Topics covered:**

Insuring agreement
Exclusions

## Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and **advertising injury**" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and **advertising injury**" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1)   The amount we will pay for damages is limited as described in Section III—Limits of Insurance; and

   (2)   Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A AND B.

b.   This insurance applies to "personal and **advertising injury** caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

*Analysis*

The coverage B insuring agreement expresses the insurer's promise to pay those sums that the insured becomes legally obligated to pay as damages because of "personal and **advertising injury**" to which the insurance applies.

The all-important definition of "personal and **advertising injury**" is discussed in other pages of this tab; *see* Commercial General Liability Definitions; Public Liability A.2 pages. But, in brief, the terms include a wide range of offenses that often result in neither bodily **injury** nor damage to tangible property and consequently are not insured under coverage A of the CGL coverage form.

Personal **injury** offenses are covered if they arise out of the conduct of the named insured's business, *other than advertising, publishing, broadcasting, or telecasting done by or for the named insured.* So, if the named insured is itself in the business of advertising, publishing, broadcasting, or telecasting—for example, an **advertising** agency, a

newspaper, or a radio or television station—it will need to have a more specialized form of coverage designed for firms in those businesses.

Advertising **injury** offenses are covered if they arise in the course of __advertising__ the *named insured's* goods, products, or services; conversely; if the insured's advertising activity is not the direct or proximate cause of the alleged **injury**, there is no legal liability and the insuring agreement will not apply. When the named insured (who is not in the advertising, etc. business) is merely **advertising** *its own* business, however, it will be protected by coverage B of the CGL forms against the **advertising injury** offenses as defined. A grocery that distributes flyers in its neighborhood is an example of this point.

Note that the insurance applies only if the offense was committed in the coverage territory. Offense is not a defined term in the CGL forms (as is occurrence under coverage A), but it is used in the personal and **advertising injury** insuring agreement instead of occurrence because this insuring agreement is meant to apply to *intended* actions of the insured. Occurrence, of course, means an accident, but if the insured commits an act for which personal **injury** or **advertising injury** coverage is applicable, that act is not an accident. For example, if the insured detains someone or writes an article that libels a person, those acts of detention and writing are intentional (not accidental), and the insured needs protection for such intentional acts. Occurrence-as-an-accident coverage will not do the job.

It is interesting to note that the Montrose provisions that are in the coverage A insuring agreement are not part of the coverage B insuring agreement. It could be that the particular nature of coverage B—personal and advertising **injury** caused by an offense (intended actions as opposed to accident)—does not warrant Montrose provisions. Or, perhaps since the Montrose case itself dealt with property damage and with an occurrence, there was no perceived threat to personal and **advertising injury** coverage. For whatever reason, coverage B does not have the Montrose clauses.

# Exclusions

This insurance does not apply to:

a.  Knowing Violation of Rights of Another

  "Personal and advertising **injury**" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and **advertising injury**".

b.  Material Published With Knowledge of Falsity

  "Personal and **advertising injury**" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.  Material Published Prior To Policy Period

  "Personal and **advertising injury**" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d.  Criminal Acts

  "Personal and **advertising injury**" arising out of a criminal act committed by or at the direction of the insured.

e.  Contractual Liability

  "Personal and **advertising injury**" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f.   Breach Of Contract

"Personal and **advertising injury**" arising out of a breach of contract, except an implied contract to use another's **advertising** idea in your "advertisement".

g.   Quality Or Performance of Goods—Failure To Conform To Statements

"Personal and **advertising injury**" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement".

h.   Wrong Description of Prices

"Personal and **advertising injury**" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i.   **Infringement** of **Copyright**, Patent, Trademark or Trade Secret

"Personal and **advertising injury**" arising out of the **infringement of copyright**, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to **infringement**, in your "advertisement", of **copyright**, trade dress or slogan.

j.   Insureds In Media And Internet Type Businesses

"Personal and **advertising injury**" committed by an insured whose business is:

(1)   **Advertising**, broadcasting, publishing or telecasting;

(2)   Designing or determining content of websites for others; or

(3)   An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a, b.,** and **c.** of "personal and **advertising injury**" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of **advertising**, broadcasting, publishing or telecasting.

k.   Electronic Chatrooms Or Bulletin Boards

"Personal and **advertising injury**" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.   Unauthorized Use Of Another's Name Or Product

"Personal and **advertising injury**" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.   Pollution

"Personal and **advertising injury**" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   n.  Pollution-Related

      Any loss, cost or expense arising out of any:

      (1)  Request, demand, order, or statutory or regulatory requirement that any insured or others test
      for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or
      assess the effects of "pollutants"; or

      (2)  Claim or suit brought by or on behalf of a governmental authority for damages because of
      testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in
      any way responding to, or assessing the effects of "pollutants".

   o.  War

      "Personal and **advertising injury**", however caused, arising, directly or indirectly, out of:

   (1)     War, including undeclared or civil war;

   (2)     Warlike action by a military force, including action in hindering or defending against an actual or
          expected attack, by any government, sovereign, or other authority using military personnel or other
          agents; or

   (3)     Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in
          hindering or defending against any of these.

*Analysis*

The first and fourth exclusions listed above mean that, even though personal and **advertising injury** liability coverage is
for intentional acts of the insured, that coverage will not extend to an intentional act that the insured knows is illegal or
wrong. Knowingly violating the rights of another or committing a criminal act are things that an insurer would have to
prove against the insured if the exclusions were to be applied; but the existence of the exclusions on the CGL policy are
meant to show that, while the insured is covered for some intentional acts under coverage B of the CGL form, there is a
line which the insured should not cross.

The second exclusion presents another example of an intentional act that is not covered by the CGL form. If the insured
knows that the material he or she has is false and publishes it anyway, any personal or **advertising injury** that arises out
of that publication is not covered under the CGL form.

The third exclusion simply means that the insurer does not want the CGL form to apply to offenses of the insured that
took place before the CGL form's policy period begins. The claims-made version of the CGL form replaces the phrase
"before the beginning of the policy period" with the phrase " before the Retroactive Date, if any, shown in the
Declarations", but the basic thrust of the exclusion is the same—no coverage before the date that the insurer and the
insured have agreed upon.

The fifth exclusion, affecting assumed contractual liability coverage, includes the qualification clarifying that the
exclusion does not eliminate coverage for liability that the insured would have in the absence of the contract or
agreement. Note that insured contracts are not mentioned in this exception to the contractual exclusion.

The sixth exclusion simply reinforces the fact that a CGL form is not meant to apply to breach of contract liabilities; any
contractual liability coverage under the CGL form is for the assumption of another's liability under an insured contract as
defined on the CGL form. The exception to this exclusion involves an implied contract, a term not defined on the form
but which means an agreement that is legitimately inferred from the conduct of the parties or by the law, as a matter of
reason and justice. An example of this would be a business acquaintance of the insured suggesting an idea to be used in
the insured's ads about the insured's products; if the acquaintance renders this service indicating that he expects to be paid
something, and the insured uses the idea knowing that the acquaintance expects compensation, that is an implied contract
between the two parties. If some personal or **advertising injury** arises out of the use of that ad, coverage B of the CGL

form will respond to the resultant claim.

Sometimes, a product or service just does not live up to its hype, for whatever reason; this is a business risk that an insured must bear himself. If the CGL form were to guarantee the quality or performance of every product or service that the insured **advertises**, not only would the number of lawsuits overwhelm the insurer and the insured, but the limits of insurance would be used up rather quickly. The seventh exclusion acknowledges this point.

The eighth exclusion realizes that an insured can make a mistake and **advertise** a product for sale at, say, $6.90 when the correct price is $9.60. Once again, this is a business risk that the insured must bear himself or else, the CGL form would quickly lose its efficacy.

The exclusion pertaining to the infringement of copyright, patent, trademark, or trade secrets is meant to strengthen the fact that the CGL form does not apply to infringement of intellectual property rights, like patent or trademark infringement. Some claims have been made trying to have the CGL form cover allegations especially of patent infringement, and this exclusion makes the point that such **infringements** are better covered by a specialty type policy. There is an exception made for the **infringement of** another's **copyright**, trade dress or slogan in the named insured's advertisement, but that is in keeping with the definition of personal and **advertising injury** (see Commercial General Liability Definitions).

The next three exclusions are part of the October, 2001 revisions of the CGL forms. They recognize the possible liabilities that the insured could face in the brave new world of e-commerce and electronic communications.

Exclusion j. is simply an e-commerce extension of the fact that coverage B is not intended to apply to those who are in the business of advertising, broadcasting, publishing, or telecasting. This exclusion recognizes the fact that, today, advertising, broadcasting, and publishing companies can carry on their respective business via the Internet and over the Web. These particular businesses—no matter their format—are professional activities with unique liability exposures that should be covered under specialty type policies and this exclusion makes that point. The exclusion does not apply to certain paragraphs of the definition of "personal and **advertising injury**"; these paragraphs deal with false arrest, malicious prosecution, and the wrongful eviction from or invasion of the right of private occupancy.

Exclusion k., dealing with chatrooms and bulletin boards, is a response to the idea that an entity that hosts a chatroom or bulletin board can be considered in control of the content as the publisher. This could thus open that entity to liability claims based on publishing libelous information or violating a person's right of privacy. This publisher type of exposure should be handled by a specialty type policy.

Exclusion l. deals with the unauthorized use of another's name or product, such as using metatags and domain names, to mislead another's potential customers. If an insured were to use these methods to intentionally divert business away from others and toward the insured itself, this is not the type of activity meant to be covered by an insurance policy. Even if such actions are not illegal, they are certainly unethical and the CGL form will not protect the insured under such circumstances.

Coverage B has a pollution exclusion because some courts had looked at part of the definition of personal **injury** (that is, the wrongful entry into or invasion of the right of private occupancy of a ... premises) and declared that pollution was an invasion of the right of private occupancy. Therefore, this exclusion was written in a manner meant to be more absolute than that found in coverage A of the CGL form. Coverage B is not meant to apply to a pollution claim.

The pollution-related exclusion is basically the same as the clean up exclusion found under coverage A of the CGL form; see CGL Coverage Form—Coverage A. The CGL form will not respond to any demands or requests for clean up costs associated with pollution.

The last exclusion simply wants to preclude any coverage under the personal and **advertising** injury liability section of the CGL form that does not exist under the bodily injury and property damage liability pertaining to war or warlike actions. The thinking here is that someone would claim a personal **injury** (for example, false arrest, slander, or libel) arising out of a warlike action, such as a terrorist attack, and then the insured would seek coverage under the CGL form; this exclusion would prevent insurance coverage under the insured's CGL form.

# EXHIBIT 9



# CHUBB GROUP OF INSURANCE COMPANIES

90 East Livingston Boulevard Suite 300 Princeton New York 1165-1144
Phone: (518) 745-0200   Facsimile: (518) 745-0498

May 29, 2007



Gottlieb, Rackman and Reisman P.C.
270 Madison Avenue
New York, NY 10016
Attention: Mr. George Gottlieb
(Via Fax 212-684-3999)

RE:  Insured:      Laurice El Badry Rahme Ltd DBA Laurice and Co.
     Policy:       35825629
     Company:      Federal Insurance
     Policy:       79837973
     Date of Loss: March/April 2007

Dear Mr. Gottlieb:

The Federal Insurance Company acknowledges receipt of your letter dated 5/15/07 which we received via email from the broker; Hamilton Levy Miller and Co, on 5/16/07. In your letter you disagree with our 5/9/07 denial of coverage because you state that there is a claim for trademark infringement which falls within the definition of advertising injury and you dispute the applicability of the exclusionary language cited in the letter.

We have reviewed your letter, along with emails from the insured in which she has advised the case has settled for $90,000, however, our position remains that no coverage is afforded for this loss.

In your letter you state that the use of the "Pucci" name, which name is a registered trademark, in the various magazine articles and interviews about the new product, constitutes infringement of a registered trademark and thus is covered under the Federal policies. Our review of the various trade articles and interviews reveals that the insured merely referenced the name "Pucci" as a description of her perfume bottle design. The insured did not misappropriate the "Pucci" mark. Accordingly, we do not believe that the reference of the name qualifies as trademark infringement.

Your letter also references various exclusions which you deem to be inapplicable. Federal Insurance Company agrees that the "Continuing Offenses" exclusion does not apply as you advise that the relevant events occurred in March/April of 2007. However, we are reiterating our position that the Intellectual Property Laws or Rights exclusion is applicable. While you allege that Trademark Infringement was in fact a claim made by Pucci, the main thrust of the claim is for the infringement of the "Occhi" pattern used on the perfume bottle. The Occhi pattern is protected by copyright, but copyright infringement is not an enumerated covered offense under the definition of Advertising Injury. It does, however, fall within the policy definition of Intellectual Property Laws or Rights and triggers the applicability of the Intellectual Property Laws or Rights exclusion.

You state that the exclusion does not apply because the trademark infringement falls within the policy definition. However, the second part of the exclusion which you reference in your letter, "this exclusion applies, unless such injury: is caused by an offense described in the definition of advertising injury; AND does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any intellectual property law or right, other than one described in the definition of advertising

injury," further enforces the first part of the exclusion. Although we do not agree that there is trademark infringement, had there been, the claim for copyright infringement falls within the "AND" portion of the exclusion and eliminates all coverage.

The other issue you raise relates to the exclusion for Expected or Intended Injury. Although we continue to believe this exclusion is applicable, it is not the determining factor in our analysis. Regarding the various FC&S materials you enclosed, our analysis is based on our policy language, not on the ISO and other information referenced in the bulletins. For the reasons cited above, we are maintaining our disclaimer.

Sincerely,

Sharlene Guthman
Casualty Claims
(516) 745-8225

cc:    Laurice and Company
       9 Bond Street
       New York, NY 10012
       Attn: Ms. Laurice Rahme

       Hamilton Levy Miller and Company
       644 Woodfield Road
       West Hempstead NY 11552
       Attn: Mr. Fred Levy
       Fax: 516-481-5107

**EXHIBIT 10**

GOTTLIEB, RACKMAN & REISMAN, P.C.

COUNSELORS AT LAW

PATENTS · TRADEMARKS · COPYRIGHTS · INTELLECTUAL PROPERTY

270 MADISON AVENUE
NEW YORK, N.Y. 10016-0601
PHONE: (212) 684-3900 · FACSIMILE: (212) 684-3999
WEB: http://www.grr.com · E-MAIL: info@grr.com

JAMES REISMAN
MICHAEL I. RACKMAN
GEORGE GOTTLIEB
BARRY A. COOPER
DAVID S. KASHMAN
ALLEN I. RUBENSTEIN
JEFFREY M. KADEN
AMY B. GOLDSMITH
TIBERIU WEISZ
MARIA A. SAVIO
RICHARD S. SCHURIN

OF COUNSEL
DIANA MULLER*

* MEMBER OF THE BAR
OF ARGENTINA ONLY

DONNA MIRMAN BROOME
BARBARA H. LOEWENTHAL
MARC P. MISTHAL
FRANK D. DECOLVENAERE
STEVEN STERN
YUVAL H. MARCUS

PATENT AGENT
ZOYA V. CHERNINA

June 20, 2007

**VIA FED EX**

Ms. Sharlene Guthman
Casualty Claims
Chubb Group of Insurance Companies
333 Earle Ovington Boulevard, Suite 800
Uniondale, New York 11553-3844

> Re:    **General Liability Insurance Policy and Umbrella Policy
> For Laurice El badry Rahme Ltd. dba Laurice & Co.
> Policy Nos. 35825629 and 79837973**
> <u>**Claim made by Emilio Pucci SRL and Emilio Pucci, B.V.**</u>

Dear Ms. Guthman:

As you are aware, we are counsel for the above insured, Laurice & Co., and have received your letter of May 29, 2007, again rejecting coverage.  We note that we have previously written a letter to Chubb, dated May 15, 2007, requesting coverage, and the contents of this letter is incorporated herein by reference.

In the present letter, we address only the bases for rejection set forth in your May 29, 2007 letter.  Other points made in your prior letters will be addressed herein only to the extent repeated again in your May 29, 2007 letter.

In our opinion, for the reasons set forth in detail below, Chubb has improperly denied coverage.  It has done so in a situation where coverage is quite clear and therefore we must deem Chubb's denial of coverage to be in bad faith.  Due to Chubb's denial of coverage, our client solely for financial reasons was forced to accept a burdensome settlement and was also forced to recall and to destroy its products. Our client would not have been in that difficult situation, had Chubb granted the coverage the insurance contract required of it.

Your initial reason for denying coverage, as stated in the third paragraph of your May 29,

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 2

2007 letter, is that in the various trade articles and interviews of our client, wherein the "Pucci" [i] term is mentioned, the insured "merely referenced the name 'Pucci' as a description of her perfume bottle design. The insured did not misappropriate the 'Pucci' mark". You then concluded that you "do not believe that the reference of the name qualifies as trademark infringement".

This basis for rejection of coverage is improper as a matter of law and is improper as an insurance contract interpretation for two reasons.

First, Chubb's <u>belief</u> as to whether our client engaged in trademark infringement by the use of the "Pucci" trademark is of little moment. The test to determine the existence of a qualifying claim in such a situation, is whether the <u>adverse party</u> has made a charge of trademark infringement. The contents of the claim letters determine the basis for a claim, not the opinion of the insurance company.

Here, counsel for Pucci charged in numerous letters and documents that our client committed trademark infringement by referring to "Pucci", as follows:

> <u>Letter from counsel for Pucci to Ms. Laurice Rahme of Bond No. 9</u>, dated April 4, 2007 (Exhibit A).

In this letter, counsel for Pucci charged:

> Furthermore, it results from various press articles in renown Fashion magazines such as WWD... or W ..., that this copying, which is qualified of "vintage Pucci-esque" is intended to trade upon the fame and notoriety of Pucci, as illustrated by your own reference to "PUCCI style [which you said] is timeless".

> <u>Letter from counsel for Pucci's to counsel for Laurice & Co.</u>, dated April 30, 2007 (Exhibit B).

This letter by Pucci's counsel again charges trademark infringement:

> While your client used the Pucci name and Trademark on media articles, as well as the adjective "Pucciesque", you are basically claiming that your client was not willful in infringing the Pucci Occhi Design.

---

[i]    You admit that "Pucci" is a registered trademark of Emilio Pucci SRL.

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 3

Moreover, the fact that your client copied our Pucci well known Intellectual Property Rights knowing that these products were not originated from Pucci ("Pucci" as well as the word "Pucciesque") makes it clear that her intention was willful. This unauthorized use of Pucci's rights proves that they were intentionally copied to elevate the status of the infringing items and confuse customers who are interested in possessing genuine products which bear the Pucci Trademarks, copyrights and/or Trade Dress.

We believe that your client could not come with such a design for her products, selecting it without knowing the prior famous rights of Pucci. If not, how would you explain that she presented her perfume bottles to the media press, by using the "Pucci" name and Trademark and or adding the word "Pucciesque", adding more confusion as to the source of the item?

Your client used the "Pucci" name and Trademark in connection with the sales of those infringing items, showing that this infringement was undeniably willful.

<u>Settlement Agreement between Pucci and Laurice & Co.</u> of May 17, 2007 (Exhibit C).

This agreement states in the 4th Whereas clause:

Whereas, Emilio Pucci learned that Bond No. 9 was using the "Emilio Pucci" Trademarks and referring to "Emilio Pucci" in relation with the promotion of the Allegedly Infringing Product; and....

The agreement further states in paragraphs 12 and 13:

Bond No. 9, together with its officers, directors, employees, partners, agents, subsidiary, successor, assignees, and affiliates agrees to contractually enjoin and permanently restrain from directly or indirectly manufacturing, importing, exporting, distributing, offering for sale, selling, advertising or promoting the Allegedly Infringing Product, or any products which are likely to cause confusion, mistake or to deceive as to the origin, sponsorship or approval with the Emilio Pucci Trademarks.

Bond No. 9 further agrees that it will neither sell, offer for sale, nor otherwise distribute infringing Emilio Pucci merchandise in the future nor

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 4

will it infringe upon the Emilio Pucci Trademarks in the future.

<u>Letter from Pucci's counsel to counsel for Laurice & Co.</u>, dated June 7, 2007 (Exhibit D).

This letter states in paragraphs 1 - 3:

The term "PUCCI" is a United States registered trademark of Emilio Pucci International B.V. aka Emilio Pucci International BV Co.

Your client, Laurice & Co., publicly used the phrases "PUCCI -Esque" and "PUCCI -inspired", to refer to a Laurice & Co., perfume product. These statements were made to the press, who printed them in several articles about the Laurice & Co. perfume.

Those statements, and the advertising and promotion by your client, constituted trademark infringement of the registered trademark "PUCCI", under the trademark laws of the United States.

In summary, Pucci's counsel <u>continuously</u>, before, during and after the dispute with our client, charged that our client infringed the Pucci trademark. Theses charges by Pucci's counsel clearly demonstrate that the condition in the insurance contract, requiring a claim for the trademark infringement, has been met. As stated previously, whether or not Chubb is of the opinion that trademark infringement took place is, frankly, meaningless; it is the nature of the claim made by the adverse complainant which determines whether a trademark infringement claim has been set forth.

Many court opinions support that principle, that in determining whether a charge of trademark infringement has been made, the insurance company must analyze the charge made by the adverse claimant, not whether the insurance company believes that there is trademark infringement. Thus in *Poof Toy Products, Inc. v. U.S. Fidelity and Guarantee Co.*, 891 F. Supp. 1228, 1233 (E.D. Mich. 1995) the Court said:

An insurance company's duty to defend the insured arises from the allegations in the third party's complaint against the insured.

Second, in the same paragraph of your letter of May 29, 2007, you have characterized our client's actions by stating that the insured "<u>merely</u> referenced the name Pucci as a description of her bottle design." However, the Trademark Statute, at 15 U.S.C. Sec. 1125 (a)(1), states that a false reference to one's product constitutes trademark infringement.

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 5

For example, in *Gucci Shops, Inc., v. R.H. Macy & Company, Inc.*, 446 F. Supp. 838, (S.D.N.Y.1977), the Court held that the use of "GUCCHI" on diaper bags was an infringement of the registered trademark "GUCCI".

The Court stated at page 841:

> It is not unreasonable to assume that defendant's use of the "GUCCHI" mark and the stripe on the "diaper bag" would mislead members of the public into believing that plaintiff is somehow connected with the "diaper bag."

For the above two reasons, we again reject your denial of coverage on the basis set forth in the third paragraph of your May 29, 2007 letter.

Your next basis for rejection is set forth in the fourth paragraph of your May 29, 2007 letter, wherein your state that "the main thrust of the [Pucci] claim is for the infringement of the "Occhi" pattern," which you state is protected by copyright.

Of course, by characterizing Pucci's "main thrust" as being for copyright infringement, you effectively admit that at least a "minor" thrust was for trademark infringement in the coverage of advertising, this being a qualifying claim.

You do not provide any factual basis for your conclusion as to whether the "Pucci" trademark claim was major or minor. In this regard, we attach as Exhibit E, a Schedule showing that the "Pucci" term was widely used in the trade press as referring our client's product and this was vigorously objected to in both claim letters from Pucci's counsel, in numerous conversations with Pucci's counsel, in the settlement agreement, Exhibit C, and in the summary by Pucci's counsel, Exhibit D. "Major" or "minor", Pucci's counsel claim of trademark infringement was a substantial portion of their complaint to the insured.

Furthermore, as a qualifying condition for coverage, it makes no difference if the trademark infringement claim is major or minor. The Chubb insurance contract says nothing about differentiating between a major or a minor charge. If a trademark infringement claim has been made, of a registered trademark, then this condition for coverage is met! It is universally upheld by the courts that if even one claim is made which falls in the insured's insurance coverage, there is a duty to defend all claims by the insurer.

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 6

Thus, the *Poof* Court stated, at page 1233:

> Even if only a minority of the theories or claims fall within the policy's coverage, the duty to defend the entire suit exists. Id. at 142 Reurink Bros., 131 Mich. App. at 142 ("If any theories fall within the policy, the insurer owes a duty to defend the suit.").

Also, in *Hugo Boss Fashions, Inc. v. Federal Insurance Company*, 1999 U.S. Dist. Lexis 17016 (S.D.N.Y.1999), the Court stated at page 7, that the insurance company must show that:

> the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision ... If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.

Again, since, at the very least, a "minor" claim of trademark infringement was made by Plaintiff, coverage exists.

Finally, you state in the fifth paragraph of the May 29, 2007 letter, that the intellectual property exclusion would apply in any case. You quote the following policy language, and you emphasize the conjunctive "and" therein:

> "... this exclusion applies, unless such injury: is caused by an offense described in the definition of advertising injury; AND does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any intellectual property law or right, other than one described in the definition of advertising injury"...

However, even if this exclusion does apply, you completely fail to address the meaning of the final clause, "other than one described in the definition of advertising injury", which we discussed in our letter of May 15, 2007.

The dictionary meaning of "**other than**" is--- "with the exception; except for; besides." This is taken from: The American Heritage Dictionary of The English Language 4th Edition.

Hence, the words "**other than**" mean that an exception or carve out to the exclusion is to follow. The exception is the existence of an advertising injury! We can see no reasons why the

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 7

exception to the intellectual property exclusion does not apply directly to the insured.

While we are of the opinion that the "carve out" mentioned above applies and therefore the intellectual property exclusion does not apply, we again note that your May 29, 2007 letter fails to even comment on this "carve out" provision. Chubb's prior letter of May 9, 2007, also failed to discuss this "carve out," although the carve out provision was quoted in the Appendix to that letter. From this, we conclude that Chubb entertains an ambiguity as to the meaning of this provision. However, it is well-settled in insurance law, that any ambiguity in an insurance contract is to construed against the insurance company, and coverage is to be provided until the ambiguity is resolved in favor of the insurance company.

Thus in *Hugo Boss Fashions, Inc. v. Federal Insurance Company*, 252 F3d 608 (2d Cir. 2001), the Court said, at 624:

> The case before us involves this kind of legal uncertainty (what does "trademark slogan" mean?), as well as the additional legal question of whether the term was clear enough to avoid *contra proferentem*. It was, therefore, incumbent upon Federal to undertake a defense of Hugo Boss until the uncertainty surrounding the term was resolved. ... given this doubt, Federal's failure to provide a defense for Hugo Boss in the infringement suit was a violation of its contractual duties. Accordingly, we affirm the district court's conclusion that Federal was obligated to defend plaintiffs in the BMC Action.

We must conclude that Chubb breached the insurance contract in failing to grant coverage while any ambiguity was resolved.

Therefore, for all of the above reasons, we again request the grant of coverage by Chubb.

As has been conveyed by the broker involved, Fred Levy of Hamilton, Levy, Miller & Co., Inc., we would welcome a meeting with Chubb's counsel to discuss coverage.

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 8


      Failing  all of the above and in view of the serious financial business harm caused to our client by the denial of coverage, Chubb leaves us no choice but to take further legal steps to enforce our client's insurance rights.

                        Very truly yours,

                        GOTTLIEB, RACKMAN & REISMAN, P.C.


                        George Gottlieb

GG/dab
4543/118
Encls
cc:    Ms. Laurice Rahme, Laurice & Co. (via e-mail and Fed Ex with encls.)
       Mr. Fred Levy, Hamilton, Levy, Miller & Co., Inc. (via e-mail and Fed Ex with encls.)

Ms. Sharlene Guthman
Chubb Group of Insurance Companies
June 20, 2007
Page 9

## SCHEDULE OF EXHIBITS

EXHIBIT A         Letter of April 4, 2007 from counsel for Pucci to Ms. Laurice Rahme of Bond No. 9.

EXHIBIT B         Letter of April 30, 2007 from counsel for Pucci to counsel for Laurice & Co.

EXHIBIT C         Settlement Agreement of May 17, 2007 between Pucci and Laurice & Co.

EXHIBIT D         Letter of June 7, 2007 from Pucci's counsel to counsel for Laurice & Co.

EXHIBIT E         Schedule showing usage of "Pucci" by Laurice & Co.

**EXHIBIT 11**

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 2


## THE CLAIM

On or about April 16, 2007, the Pucci cease and desist letter dated April 4, 2007 was tendered to Federal. The letter stated that Pucci recently "learned that your company just launched a new perfume named 'Bryant Park' which bottle unmistakably mimic[s] one of the famous Pucci prints created in the 70's known as the 'Occhi' print." The unauthorized use of the Pucci's Occhi print was alleged to "infringe on Pucci's intellectual property rights and incorrectly suggests that the Bond No. 9 Bryant Park perfume originates with or is licensed, authorized or sponsored by Pucci when it is not." The letter also referenced press articles which allegedly evidenced Laurice &Co.'s intention to trade upon the fame and notoriety of Pucci and which described the bottle as "vintage Pucci-esque," "Pucci-inspired," "recognizable as a paean to the fashion designs of Pucci," or as "channel[ing] famed designer Emilio Pucci." Pucci demanded that Laurice & Co. cease and desist from any use of the Occhi print, surrender all samples of the Bryant Park perfume, provide names and addresses of all persons to whom the Bryant Park perfume had been distributed or sold, provide copies of all correspondence received or sent concerning the Bryant Park perfume, and provide the total dollar amounts earned as a result of the sales of the Bryant Park perfume.

In a subsequent email to you dated April 30, 2007, the Pucci representative charged that "your client could not come up with such a design for her products, selecting it without knowing the prior famous rights of Pucci." It is then asserted that Ms. Rahme presented her perfume bottles to the media press by using the "Pucci" name and trademark and adding the work "Pucci-esque," and thereby creating more confusion as to the source of the item. The email again challenges the unauthorized use of the Occhi design on the bottle, particularly in light of Pucci's launch of its cosmetic products, and insists that Bond No. 9 "disgorge all profits earned from selling the infringing goods."

On or about May 17, 2007, the parties settled this matter. The focus of the agreement is the Allegedly Infringing Product defined as the perfume named Bryant Park which bottle and corresponding merchandizing elements such as the mannequin allegedly mimic the Occhi design. Among other things, Bond No. 9 acknowledged Pucci's ownership in the federally registered Emilio Pucci trademarks, and in and to the Occhi Copyright and Trade Dress; it agreed that it had ceased and desisted its use of the Allegedly Infringing Product, particularly the design, manufacture, purchase, distribution, offer for sale, sale, advertisement, promotion, marketing, export and import; and it also agreed to dispose of the Allegedly Infringing Product and subsequent material and/or merchandizing (such as the mannequin) infringing on Emilio Pucci trademarks, including its Occhi Copyright and Trade Dress, and not use them.

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 3

Bond No. 9 paid a settlement amount to Emilio Pucci, approximately equivalent to the profits
on the sales of the Allegedly Infringing Product, in the amount of $90,000.

## SUMMARY OF INSURANCE

Federal issued a Commercial General Liability policy to Laurice & Co., number 3582-56-29,
for the policy period from June 5, 2006, to June 5, 2007. This policy has limits of
$1,000,000 each occurrence and $1,000,000 personal injury and advertising injury aggregate
limit, and a $2,000,000 general aggregate limit.

Federal also issued a Chubb Commercial Excess and Umbrella policy number 7983-79-73, to
Laurice & Co. for the June 5, 2006, to June 5, 2007 policy period. This policy has limits of
$2,000,000 each occurrence, excess coverage and umbrella coverage limit, and advertising
and personal injury aggregate limit. Coverage A provides follow form excess coverage and
Coverage B provides umbrella liability insurance.

## COVERAGE POSITION

Pucci did not allege "bodily injury" or "property damage" caused by an "occurrence," as
those terms are defined in the policy. Nor are there any allegations of damage by reason of
liability for a "personal injury" offense. The only relevant inquiry in this matter concerns
whether or not the claims asserted potentially fall within the "advertising injury" coverage.

The insuring agreement states that Federal will pay damages that the insured becomes legally
obligated to pay by reason of liability imposed by law for "advertising injury" to which this
coverage applies. "Advertising injury" is defined to include injury "caused by an offense of
infringing, in that particular part of your **advertisement** about your goods, products or
services, upon their: copyrighted **advertisement**, or registered collective mark, registered
service mark or other registered trademarked name, slogan, symbol or title."
"Advertisement" means "an electronic, oral, written or other notice, about goods, products or
services, designed for the specific purpose of attracting the general public or a specific
market segment to use such goods, products or services."

The heart of the Pucci claims were the infringement of its Occhi design which appeared on
the Bryant Park bottle, i.e., the "swirls of pink, lavender and black." To fall within the
insuring agreement of the Federal policy, the alleged infringement of the claimant's
copyrighted advertisement or registered trademarked name, slogan symbol or title must
occur in some part of the insured's advertisements. The fact that those in the media
recognized the bottle design as reminiscent of Pucci designs and wrote articles using the

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 4

"Pucci" name does not make their articles "your advertisements," i.e., the advertisements of
Bond No. 9. The reviewers were merely commenting on the design of the bottle itself.
Federal was provided with no Bond No. 9 advertisements which included the "Pucci"
trademarked name nor did the "Pucci" name appear on the bottle itself. We do have a print
or screen ad of the insured, copy attached, and note that it also does not use the "Pucci"
name anywhere. Moreover, we were able to locate a Bond No. 9 press release for Bryant
Park, dated January 5, 2007 (a copy of which is attached hereto) and note that the name
"Pucci" does not appear anywhere in the copy. You refer to *Gucci Shops, Inc. v. R.H. Macy
& Co.*, 446 F.Supp. 838 (S.D.N.Y. 1977), as support for the conclusion that a false reference
to one's product constitutes trademark infringement. Gucci sought to enjoin Fashioncraft
from manufacturing a "diaper bag" which infringed their Gucci trademark; the word
"GUCCHI" and the word "GOO" were silk screened on the side of the diaper bag. As we
pointed out above, the word "Pucci" does not appear on the Bryant Park bottle or in the
insured's advertisements for the Bryant Park fragrance. The *Gucci* case is not relevant. It is
the insured's burden to show that the provisions of a policy provide coverage. *Chase
Manhattan Bank v. Travelers Group*, 269 A.D.2d 107, 108, 702 N.Y.S.2d 60 (2000).
Laurice & Co. has been unable to point to one of its own advertisements that used the name
"Pucci."

Nor did the claims of Pucci trigger Federal's defense obligation since no "suit" was filed.
The policy states that Federal will have the right and duty to defend the insured against a
"suit." "Suit" is defined. It means "a civil proceeding in which damages, to which this
insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution
proceedings in which such damages are sought and to which the **insured** must submit or
does submit with our consent." Neither the cease and desist letter of April 7 nor the email
dated April 30 triggered Federal's duty to defend; no suit was filed by Pucci. See *HRH
Construction Interiors v. Royal Surplus Lines Ins.*, 16 A.D.3d 115, 791 N.Y.S.2d 26 (2005),
in which the insurer's duty to defend the insured subcontractor was not triggered upon the
contractor's notice of the accident.

In addition, Pucci demanded that Bond No. 9 disgorge all profits earned from the sale of the
allegedly infringing product. The settlement agreement requires the payment of $90,000,
which amount was stated to be the approximate equivalent of the profits on the sales of the
Bryant Park fragrance, the allegedly infringing product. The policy at issue provides
coverage for "damages" the insured is legally obligated to pay by virtue of "advertising
injury" or "property damage." The disgorgement of profits is not insurable and restitution of
such amounts does not constitute "damages" as that term is used in insurance policies. See
*Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 10 A.D.3d 528, 782 N.Y.S.2d 19
(2004). In *Vigilant v. Credit Suisse*, the court held that the insured could not recover through

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 5

its liability insurers the amount of a settlement which represented the disgorgement of funds improperly acquired through its violations of various securities regulations. *Id.* at 529. "It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies [citations omitted]." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10, cited in *Reliance Group Holdings, Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh, Pa.*, 188 A.D.2d 47, 55, 594 N.Y.S.2d 20 (1993), dismissed in part and denied in part 82 N.Y.2d 704, 601 N.Y.S.2d 578, 619 N.E.2d 656 (1993), in which the directors and officers liability policy was found not to cover partial restitution of "greenmail" profits.

Even if Bond No. 9 had used the Pucci registered trademark in its advertisements and been liable for damages, the policy contains an exclusion entitled Intellectual Property Laws or Rights which would apply to bar coverage since there are also allegations of copyright and trade dress infringement – two offenses which appear in the definition of "intellectual property laws or rights" but do not appear in the definition of "advertising injury." The exclusion provides as follows:

> This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:
>
> * assertion; or
>
> * infringement or violation;
>
> by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.
>
> This exclusion applies, unless such injury:
>
> * is caused by an offense described in the definition of **advertising injury**; and
> * does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual**

G:\docs\P3285\0702094.DOC

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 6

> **property law or right**, other than one described in the definition of
> **advertising injury**.

The definition of "intellectual property law or right" includes "any certification mark,
copyright, patent or trademark;" "other right to, or judicial or statutory law recognizing an
interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol,
title, trade dress, or other intellectual property;" and "other judicial or statutory law
concerning piracy, unfair competition or other similar practices."

The policy's insuring agreement must be read in conjunction with the Intellectual Property
Laws Or Rights exclusion; the exclusion, like every exclusion, serves to limit the coverage
granted. When they are read together, it is plain that the policy provides specific and limited
intellectual property coverage. The "advertising injury coverage" is extended to actions that
allege **only** a covered "advertising injury" offense and one that is not joined with the
assertion, infringement or violation of other intellectual property laws or rights. For
example, the policy covers a claim of infringement of a copyrighted advertisement caused by
the insured's advertisement, but not one that also arises out of or relates to the alleged
infringement of copyright or unregistered trade dress, which are not described in the
definition of "advertising injury." Accordingly, if Bond No. 9 had used the Pucci trademark
in its advertisements to describe the Bryant Park bottles- which did not happen- there still
would have been no coverage in light of this exclusion. Any such injury arose out of, gave
rise to and/or related to the alleged infringement of the Occhi copyright and trade dress.

You refer to *Hugo Boss Fashions, Inc. v. Federal Ins Co.*, 1999 U.S. Dist. Lexis 17016
(S.D.N.Y. 1999) for the position that if any of the intellectual property claims asserted by
Pucci were covered, then coverage exists for the entire action. *Hugo Boss* comes to its
conclusion about a policy that does not contain an IP exclusion similar to that contained in
the Federal policy. You also contend that the "carve out" provision of the IP exclusion was
not addressed in the prior letters declining coverage and thus that, "Chubb entertains an
ambiguity as to the meaning of this provision." First of all, we do not agree that the IP
exclusion and carve out were not previously addressed. In addition, under New York law,
"ambiguity does not exist 'simply because the parties urge different interpretations.'" *Hugo
Boss Fashions v. Federal Insurance Co.*, 252 F.3d 608, 616 (2d Cir.2001). There is no
uncertainty surrounding the terms used in the exclusion as the court found in *Hugo Boss*.
The plain meaning of the policy's language may not be disregarded in order to find an
ambiguity where none exists. *Catucci v. Greenwich Ins. Co.*, 37 A.D.3d 513, 514, 830
N.Y.S.2d 281 (2007). Given the clear and unambiguous language of the Intellectual
Property Laws or Rights exclusion, coverage of the Pucci claims was precluded.

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 7

Finally, regarding the Commercial Excess and Umbrella insurance, there would be no follow
form coverage under Coverage A since there is no coverage under the underlying insurance.
There is no coverage under Coverage B, which contains the same definition of "advertising
injury" and the same Intellectual Property Laws or Rights exclusion, for the same reasons
there is no coverage under the General Liability insurance. Therefore, the excess umbrella
policy does not apply to the claims asserted by Pucci or the settlement of those claims.

## CONCLUSION

Federal has reconsidered its coverage position at the request of its insured and those acting
on its behalf. Federal has asked us to reaffirm its position that it had no duty to defend
and/or indemnify Laurice & Co. in connection with the claims of infringement asserted on
behalf of Emilio Pucci. No suit was filed triggering a defense obligation. The Pucci claim of
infringement of its registered trademark did not occur in the insured's advertisements nor did
the Pucci settlement involve the payment of damages. Moreover, to the extent that covered
advertising injury was potentially alleged by Pucci, that injury arose out of, gave rise to
and/or related to the assertion of Pucci's rights in the copyright and unregistered trade dress
in and to the Occhi design, which are not covered offenses, triggering the application of the
Intellectual Property Laws Or Rights exclusion. In addition, as stated above, the excess
umbrella policy is not implicated by the Pucci claim.

Should you be of the opinion that Federal has overlooked any relevant information or if any
new information is developed which may have a bearing on the analysis of coverage in this
matter, please advise us so that Federal may consider such information.

By limiting policy references to those cited herein, Federal does not waive any of the
provisions of the involved policies and expressly reserves its right to cite additional policy
language. The insurance policies in their entirety are incorporated by reference as though
stated in full. Should you have any questions concerning the foregoing, please let us know
and we will be happy to answer them for you.

Federal expressly reserves all rights under the policies and/or available at law to deny
coverage and/or rescind the policy on additional or alternative bases as other terms,

George Gottlieb, Esq.
Pucci v. Laurice & Co.
July 24, 2007
Page 8


conditions, exclusions, endorsements, and provisions of the policies, including
representations, statements, declarations and omissions in connection with the application
therefor, are found to be applicable.

Very truly yours,

NEWTON REMMEL

Stephen L. Newton
SLN\LTM:ed


G:\docs\P3285\0702094.DOC